OPINION OF THE COURT
Gabrielli, J.
Plaintiff, the administratrix of the estate of Katherine David, seeks to recover damages for personal injuries claimed to have been suffered by the decedent in August of 1972 as a result of defendant’s alleged malpractice. At issue on this appeal is the breadth of CPLR 205 (subd [a]) and the proper application of that statute, if any, to this case. Following the alleged malpractice, decedent retained an attorney for the purpose of instituting an action against defendant. In September of 1973 the summons and complaint in that action were served upon defendant. Katherine David was the named plaintiff in that suit, although, apparently unbeknownst to the attorney, she had died in the interim. The record does not indicate any causal connection between the alleged malpractice and her death, nor has any attempt been made to assert a claim for wrongful death against defendant. What followed could aptly be denominated a comedy of errors were it not for the potentially devastating effect of those events upon what might be a valid claim.
Defendant failed to timely answer, instead sending opposing counsel a series of proposed stipulations to permit late service of an answer. Although none of those proposed stipulations were ever signed by opposing counsel, no attempt was made to enter a default against defendant. When decedent’s counsel belatedly did learn of her death, he sent defendant a proposed stipulation substituting as plaintiff the administratrix, the plaintiff in this action. That proposal was made on June 4, 1975, a date which is of some interest if only because the *174 administratrix could then instead have timely commenced a new action in her representative capacity.[1] As it was, however, the proposed stipulation was not signed by defendant. There followed a period of several months in which it would appear that no relevant action was taken. Finally, in January, 1976 plaintiff sent defendant’s counsel a document labeled an "amended summons” which named the administratrix as plaintiff. Some three months later, defendant served an answer, supposedly to the amended summons, and then moved for summary judgment. Defendant contended that the action commenced by the September, 1973 service was a nullity because the named plaintiff was already dead. As to the amended summons sent to defendant’s counsel in January, 1976, defendant argued that any action was time barred by that date.
Special Term appears to have accepted the gist of defendant’s arguments, but nonetheless denied the motion for summary judgment because defendant had failed to provide proof of the date of decedent’s death. Defendant then renewed the motion with proper proof, but the motion was again denied, this time because of some apparent uncertainty as to the various dates of service. The court set the matter down for a hearing on that seemingly elusive question. Instead of continuing that particular struggle, the parties stipulated to a dismissal "without prejudice to plaintiffs right * * * to commence any action pursuant to the authority of Section 205 of the CPLR”. Within six months of that date, the administratrix commenced this action based on the same claim. Defendant moved to dismiss on the ground that the action was untimely, but Special Term denied that motion. On appeal, the Appellate Division reversed and granted defendant’s motion to dismiss. Plaintiff now appeals to this court as of right (CPLR 5601, subd [a], par [ii]). For the reasons discussed below, we conclude that there should be a reversal.
Preliminarily, we must determine whether a prior action that has been improperly brought in the name of a dead plaintiff may nonetheless be a prior action within the ambit of *175 CPLR 205 (subd [a]). That statute provides as follows: "If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if he dies, and the cause of action survives, his executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action”.[2] The effect of the statute is quite simple: if a timely brought action has been terminated for any reason other than one of the three reasons specified in the statute, the plaintiff may commence another action based on the same transactions or occurrences within six months of the dismissal of the first action, even if the second action would otherwise be subject to a Statute of Limitations defense, so long as the second action would have been timely had it been commenced when the first action was brought. In addition to the listed exceptions, the courts have created one apparent additional exception, holding that if the first action was never properly commenced because of a failure to serve the defendant, the statute is inapplicable (e.g., Erickson v Macy, 236 NY 412). Defendant now asks us to create another exception to the statute, and to hold that it is inapplicable if the prior action was dismissed because it was commenced in the name of an improper plaintiff. This we may not do.
Defendant contends that the prior action was a "nullity” rather than an action, and thus there was in fact no prior action. Plaintiff, on the other hand, argues that although the prior action was subject to dismissal becasue it had not been commenced by a living plaintiff, it was yet an action such that a subsequent action commenced by the proper plaintiff would be protected form the application of the Statute of Limitations by operation of CPLR 205 (subd [a]).
The question obviously is not an easy one, and its proper *176 resolution is not aided by frequent use of the term "nullity”. As is often true, overbroad language serves only to becloud the issues. Simplistic analysis founded on catchwords presumed to have some talismanic significance may lead to speedy resolution of disputes; the appropriateness of resolutions so derived, however, is a function of chance, not reason. Stripped of all circumlocution, defendant’s argument is truly circular: defendant would have us hold that since the prior action was properly dismissed, it was a nullity, and thus not an action, and hence no subsequent action may be commenced pursuant to CPLR 205 (subd [a]). Acceptance of this argument would lead inevitably to the conclusion that the statute is effective only in those few cases in which the prior action should not have been dismissed; in all other cases, having been properly dismissed, for whatever reason, it must be deemed a "nullity”. To so read the statute would be to strip it of a major part of its designated role.
Before discussing the nature and breadth of subdivision (a), we note that application of the term "nullity” to an action for personal injuries brought in the name of the decedent rather than in the name of the decedent’s personal representative is based on a misunderstanding of the nature of an action which survives the injured party’s death, as opposed to an action for wrongful death. The cause of action for wrongful death was originally deemed completely a child of statute, as it had no counterpart in the common law. In contrast to an existing action which survives the injured party’s death, a wrongful death action "is not a simple devolution of a cause of action which the deceased would have had * * * but it is an entirely new cause of action” (Whitford v Panama R. R. Co., 23 NY 465, 470). That this is so is indicated by the nature of the damages recoverable and the persons for whose benefit those damages are sought. A wrongful death action is brought not on behalf of the decedent’s estate, but rather on behalf of the decedent’s distributees (EPTL 5-4.1), and the damages recoverable are not in compensation for the injury sustained by the decedent, but rather for the injuries suffered by the distributees as a result of the decedent’s death (EPTL 5-4.3). Because of the unusual nature of the wrongful death action, the statutory requirements for the maintenance of such an action were originally deemed to be substantive in nature and actual conditions precedent to the commencement of the action (see Sharrow v Inland Lines, 214 NY 101, 112-113). In accord with *177 this view of the unique nature of the wrongful death action, it was concluded that "the non-appointment of the administrators before bringing the action is not merely a lack of capacity to sue, for that presupposes an existing cause of action, which the plaintiff is incapacitated to maintain. But the due appointment and qualification of the administrators are necessary elements to the existence of the cause of action” (Boffe v Consolidated Tel. & Elec. Subway Co., 171 App Div 392, 394, affd without opn 226 NY 654).
Whatever the continuing validity of such considerations in light of the subsequent recognition of the existence of an action for wrongful death in certain areas of the common law (compare Moragne v States Mar. Lines, 398 US 375, with Ratka v St. Francis Hosp., 44 NY2d 604) they are of little value with respect to an action which survives the injured party’s death. In the latter case, there must a fortiori exist a valid action in favor of the decedent; rather than statutorily creating a new action founded on the decedent’s death, the statute which allows an action to be brought or continued by the decedent’s personal representative (EPTL 11-3.2) serves merely to remove the bar to such actions which existed under the common law. This is not to say, of course, that such an action may properly be brought or continued by someone other than the personal representative of the decedent. If such an action is brought in the name of the wrong party, dismissal is the appropriate response. Such an action, however, is no more a "nullity” than are actions which were dismissed for lack of jurisdiction or for nonjoinder, and yet the latter are traditionally deemed to be prior actions for purposes of CPLR 205 (subd [a]) (see, e.g., Park & Pollard Co v Industrial Fire Ins. Co., 197 App Div 671; People ex rel. Calderazzo v Stiner, 271 App Div 841).
This is so because the function of the CPLR subdivision is to ameliorate the potentially harsh effect of the Statute of Limitations in certain cases in which at least one of the fundamental purposes of the Statute of Limitations has in fact been served, and the defendant has been given timely notice of the claim being asserted by or on behalf of the injured party. The statute is a remedial one, and, as Judge Cardozo has explained, "[i]ts broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his *178 rights before the courts” (Gaines v City of New York, 215 NY 533, 539). Hence, even if the reason for the dismissal of the prior suit was the absence of subject matter jurisdiction, the statute has been found to apply (Gaines v City of New York, supra), although it is difficult to imagine a proceeding which could be considered more of a "nullity” than one in which the court lacked subject matter jurisdiction (see Lacks v Lacks, 41 NY2d 71, 75).
Indeed, there exists only one type of prior "action” which at first glance would appear to be included within the language of the statute, but which we have nonetheless deemed to be outside its purview: that is, those cases in which no prior action was ever actually commenced because of a defect in service (Smalley v Hutcheon, 296 NY 68; Erickson v Macy, 236 NY 412, supra). The rationale enunciated in those cases was that since the service was flawed, no action was ever commenced, and thus there existed no prior action. It has since been suggested that such holdings are more aptly explained by the theory that where the defendant receives no actual notice of the prior action, the purpose of the Statute of Limitations would not have been served as is normally the case in a situation in which subdivision (a) is applied, and thus it would be improper to apply the subdivision. Proponents of this viewpoint thus emphasize the factor of actual notice, suggesting that where the defendant did receive notice but the defect was based on some flaw in the method of service, the section should be applicable (Siegel, New York Practice, § 52, at p 54; see Amato v Svedi, 35 AD2d 672). While we need not now resolve this question, we note that this theory appears inconsistent with our decision in Smalley v Hutcheon (296 NY 68, supra) in which we refused to apply the subdivision where the prior action had been dismissed for lack of personal jurisdiction and yet the defendant had received actual notice by an improper means of service.
At any rate, in the instant case the defect in the prior action did not lie in the means of commencing the action, but rather in the identity of the named plaintiff. While that defect was fatal in the sense that the action was subject to dismissal, it was not the type of defect which precludes application of CPLR 205 (subd [a]). The very function of that subdivision is to provide a second opportunity to the claimant who has failed the first time around because of some error pertaining neither to the claimant’s willingness to prosecute in a timely fashion *179 nor to the merits of the underlying claim. The statute by its very nature is applicable in those instances in which the prior action was properly dismissed because of some fatal flaw; thus, to suggest that it should not be applied simply because there was a deadly defect in the prior action seems nonsensical. Indeed, the statute will normally "involve situations in which a suit has been started but, due to an excusable mistake or a procedural defect or ineptitude of counsel or inability to obtain needed evidence, or some other cause that should not be fatal to the claim, the start has been a false one” (1 Weinstein-Korn-Miller, NY Civ Prac, par 205.03, at p 2-134). This is just such a situation.
In sum, a distinction must be drawn between a failure to commence an action, be it due to a failure of process or some similar reason, and a defect in that action which mandates dismissal. In the former case, CPLR 205 (subd [a]) will be inapplicable, whereas in the latter case the statute will apply. Usually, of course, the fact that one party commenced an action which is subsequently dismissed, will not serve to justify application of the subdivision so as to support a later action by a different claimant. Where, however, as here, the claim is the same, and the subsequent claimant is acting as the representative of the named plaintiff in the prior action, no such difficulty arises (cf. Van der Stegen v Neuss, Hesslein & Co, 270 NY 55).
Defendant suggests that a different result is mandated by our recent decision in Goldberg v Camp Mikan-Recro (42 NY2d 1029). This argument is readily disposed of, for the two cases have nothing in common. In Goldberg, the father of a dead child improperly commenced a wrongful death action in the father’s own name. He was appointed administrator of the child’s estate after the Statute of Limitations had run, and attempted at that point to amend the complaint so as to reflect his appointment, purportedly pursuant to the "relation-back” provisions of CPLR 203 (subd [e]). This we refused to allow, holding that a necessary element of any attempt to utilize the "relation-back” provisions of that statute is the existence of a valid pre-existing action to which the amendment can relate back. Since no valid prior action existed in that case, the relation-back provisions were inapplicable. In the instant case, we are concerned with both a different statute and a different type of action. While the relation-back provisions of CPLR 203 are dependent on the existence of a *180 valid pre-existing action, CPLR 205 (subd [a]) was created to serve in those cases in which the prior action was defective and so had to be dismissed. Moreover, as has already been discussed, there is a fundamental difference between an action for wrongful death and an action which survives the death of the injured party. Hence, we conclude that CPLR 205 (subd [a]) is applicable to cases such as this.
This conclusion, however, does not fully resolve the instant appeal. Subdivision (a) is, by its own terms, made inapplicable if the prior dismissal was for any of three stated reasons. The provision operates only if the prior action was "terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits” (CPLR 205, subd [a]). As the dismissal of the prior action in this dispute was pursuant to a voluntary discontinuance, defendant argues that the subdivision is inapplicable. Plaintiff, on the other hand, contends that although the form of termination was a voluntary discontinuance, it was not in fact voluntary because Special Term had accepted defendant’s theory and had indicated that it would grant defendant’s motion upon a proper factual showing. Since there is no serious dispute but that defendant could proffer the required evidence, plaintiff argues that the stipulation was merely a recognition by her of the fact that the action was doomed. In essence, plaintiff urges us to extend our inquiry beyond the fact that the prior action was terminated by means of a voluntary discontinuance, and to consider the reason for that discontinuance. Normally we would refuse to undertake such an exhumation, for the statute is intended to protect only those plaintiffs who have been nonsuited despite their continued opposition to that fate. To undertake in every case the type of investigation suggested by plaintiff would be to encourage the reopening of settled and abandoned suits without furthering the interests served by CPLR 205 (subd [a]). Hence, where the prior action has been terminated by means of a voluntary discontinuance pursuant to a stipulation which contains no express statement of contrary intent, the statute simply does not authorize a subsequent action, regardless of the actual motives of the parties.
Here, however, the situation is somewhat different, for the voluntary discontinuance was specifically stated to be "without prejudice to plaintiff’s right * * * to commence any action pursuant to the authority of Section 205 of the CPLR”. The *181 patent purpose of this disclaimer is to preserve whatever rights plaintiff would have had to commence a new action pursuant to the statute had the prior action been terminated by order of dismissal rather than by voluntary discontinuance. We perceive no reason why this agreement between the parties should not be given its intended effect. Absent some violation of law or conflict with the interests of the public, the parties to an action have considerable freedom to waive strict compliance with procedures which might otherwise delay or preclude judicial resolution of the merits of a dispute in a particular situation. This stipulation runs afoul of no contrary public policy (cf. Kassner & Co. v City of New York, 46 NY2d 544, and thus there exists no bar to its enforcement. Hence, this action was timely commenced.
Accordingly, the order appealed from should be reversed, with costs, and the motion to dismiss the complaint should be denied.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Fuchsberg concur with Judge Gabrielli.
Order reversed, etc.

. Since the alleged malpractice occurred prior to July 1, 1975, it was clearly subject to the three-year Statute of Limitations provided by CPLR 214 (subd 6), and was not governed by the two-year and six months’ Statute of Limitations which now controls medical malpractice actions pursuant to CPLR 214-a (see L 1975, ch 109, § 37). Hence, it matters not whether the particular type of malpractice alleged in the complaint should be classified as medical malpractice.

. This is the present statutory language. Prior to April 11, 1978, the words "transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action” were not included in the statute, which instead contained the following language: "cause of action within six months after the termination” (see L 1978, ch 51, § 1). Since the amendment is not relevant to the instant dispute, we refrain from any comment as to its purpose or effect.