Sokoloff v Schor (2019 NY Slip Op 06176)





Sokoloff v Schor


2019 NY Slip Op 06176


Decided on August 21, 2019


Appellate Division, Second Department


Dillon, J.P., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 21, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ROBERT J. MILLER
SYLVIA O. HINDS-RADIX
FRANCESCA E. CONNOLLY, JJ.


2016-09791
 (Index No. 100056/16)

[*1]Margot Sokoloff, etc., appellant,
v
Jonathan Schor, etc., et al., respondents.



APPEAL by the plaintiff, in an action, inter alia, to recover damages for medical malpractice, etc., from a judgment of the Supreme Court (Charles M. Troia, J.), entered August 23, 2016, in Richmond County. The judgment, upon an order of the same court dated June 6, 2016, in effect, granting the motion of the defendants Jonathan Schor and Staten Island University Hospital, and the separate motion of the defendants Marisa Berry and Carmel Richmond Healthcare and Rehabilitation Center, pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against each of them, dismissed the complaint.



Krentsel & Guzman, LLP (Pollack, Pollack, Isaac & DeCicco, LLP, New York, NY [Brian J. Isaac and Michael H. Zhu], of counsel), for appellant.
Wilson Elser Moskowitz Edelman & Dicker, LLP, New York, NY (Judy C. Selmeci of counsel), for respondents Jonathan Schor and Staten Island University Hospital.
Aaronson Rappaport Feinstein & Deutsch, LLP, New York, NY (Steven C. Mandell of counsel), for respondents Marisa Berry and Carmel Richmond Healthcare and Rehabilitation Center.



DILLON, J.P.


OPINION & ORDER
I. Relevant Facts
In December 2013, Warren Sokoloff (hereinafter the decedent) and his spouse, Margot Sokoloff (hereinafter the plaintiff; hereinafter together the plaintiffs), commenced an action, inter alia, to recover damages for medical malpractice, etc., in the Supreme Court, Richmond County, under Index No. 102093/13 (hereinafter the 2013 action). The plaintiffs alleged that the defendants Jonathan Schor, Marisa Berry, Carmel Richmond Healthcare and Rehabilitation Center (hereinafter Carmel Richmond), and Staten Island University Hospital (hereinafter SIUH; hereinafter collectively the defendants) committed medical malpractice during the course of care and treatment provided to the decedent between November 9, 2012, and December 28, 2012.
Unbeknownst to the plaintiffs' counsel, the decedent died on September 30, 2013, approximately three months prior to the commencement of the 2013 action. On June 22, 2015, the Surrogate's Court, Richmond County (Robert J. Gigante, S.), issued to the plaintiff a "Decree Granting Limited Administration" authorizing the plaintiff to pursue, compromise, and enforce any judgment for any cause of action that existed on behalf of the decedent. The plaintiffs' counsel did not learn of the decedent's death until sometime between February 2015 and mid-July, 2015. No meaningful activity was accomplished in the prosecution of the 2013 action from its commencement [*2]on December 26, 2013, to mid-August, 2015.
On August 18, 2015, the plaintiff, in her appointed capacity as the administrator of the decedent's estate, moved in the 2013 action pursuant to CPLR 1015 and 1021 to substitute herself as a party plaintiff on behalf of the decedent's estate. During a court conference in the 2013 action on September 28, 2015, the Supreme Court was made aware that the decedent had died prior to the commencement of the 2013 action and stated, "[t]his lawsuit is a complete nullity." The court invited the defendants to respond to the plaintiff's substitution motion by moving to dismiss the complaint, stating "I will be granting that . . . motion to dismiss the complaint." In October 2015, Berry and Carmel Richmond moved, and Schor and SIUH separately moved, pursuant to CPLR 3211(a)(3) to dismiss the complaint in the 2013 action insofar as asserted against each of them for lack of capacity and, alternatively, for failing to timely seek a substitution of a proper party plaintiff under CPLR 1021. Berry and Carmel Richmond also sought an award of costs and sanctions pursuant to 22 NYCRR 130-1.1 for having had to defend the 2013 action even though the decedent died prior to the commencement of that action.
In late October 2015, before the Supreme Court decided the plaintiff's motion to substitute and the defendants' separate motions to dismiss the complaint in the 2013 action, the plaintiff commenced a second action (hereinafter the 2015 action) under Index No. 101318/15. The 2013 action and the 2015 action were identical to one another in all essential respects but for the decedent being a plaintiff in the 2013 action and his estate being a plaintiff in the 2015 action. Berry and Carmel Richmond moved, and Schor and SIUH separately moved, pursuant to CPLR 3211(a)(4) to dismiss the 2015 action on the ground that there was a prior action pending, and pursuant to CPLR 214-a and 3211(a)(5) to dismiss the 2015 action on the ground that the 2015 action was untimely.
On November 6, 2015, after the defendants had made their respective motions to dismiss the 2013 action and the 2015 action, but before those motions had been decided, the Supreme Court held another conference in the 2013 action. The court discussed with all counsel the merits of the motions in the 2013 action. Near the conclusion of the conference, the court again described the 2013 action as a "nullity" that needed to be dismissed because the decedent was already deceased when the action was commenced [FN1]. The parties negotiated the withdrawal of any extant requests for sanctions and costs. The court then stated that it was dismissing the 2013 action and denying the plaintiff's motion for substitution. The defendants' attorneys were directed to draft a written order memorializing the court's oral decision, and the court signed the order the same day. The signed order dated November 6, 2015, failed to set forth any reason for directing the dismissal of the 2013 action.
For reasons that are discussed in detail below, and contrary to the stated view of the Supreme Court at the time, the commencement of the 2013 action was not, in fact, a "nullity" due to the pre-commencement death of the decedent, but was, instead, an action merely subject to dismissal for lack of capacity under CPLR 3211(a)(3).
In an affirmation in opposition to the defendants' respective motions to dismiss the complaint in the 2015 action, the plaintiff's counsel conceded that the 2015 action was "technically" improper at the time it was commenced because the 2013 action had not yet been dismissed by the Supreme Court. However, the plaintiff's counsel maintained that the 2015 action was timely because it was commenced within six months from the termination of the 2013 action as permitted by CPLR 205(a), and the termination of the 2013 action was not for any reason that would have precluded the commencement of a new action under the statute.
While the motions to dismiss the 2015 action were pending, the plaintiff, perhaps anticipating the termination of the 2015 action and mindful of the six-month deadline of CPLR 205(a), commenced the instant action on January 15, 2016, under Index No. 100056/16. The complaint in this action was identical in all essential respects to the complaints in the 2013 action [*3]and the 2015 action.
In early February 2016, Schor and SIUH moved, and Barry and Carmel Richmond separately moved, pursuant to CPLR 3211(a)(4) to dismiss this action on the ground there was another action pending, and alternatively, pursuant to CPLR 3211(a)(5) on the ground that the action was time-barred. Specifically, as to the alternative ground for dismissal, the defendants argued that since the decedent's care and treatment had concluded by December 28, 2012, at the latest, the commencement of this action on January 15, 2016, was beyond the 2½ year statute of limitations governing medical malpractice actions under CPLR 214-a. The defendants argued that the plaintiff was not entitled to the six-month grace extension of CPLR 205(a) measured from the termination of the 2013 action, because, according to the defendants, the Supreme Court directed the dismissal of the 2013 action due to the plaintiff's neglect in prosecuting that action.
All counsel appeared before the Supreme Court on April 1, 2016, for oral argument of the motions that were pending to dismiss both the 2015 action as well as this action, at which time the history of the litigations was discussed. In an order dated June 6, 2016, the court, in effect, granted the defendants' motions to dismiss the complaint in this action as time-barred. The court explained that while the order directing the dismissal of the 2013 action did not contain the underlying reasons for the termination of the 2013 action, "the 2013 action was dismissed for failure to prosecute." The court reasoned that because the 2013 action was dismissed on the ground of the plaintiff's neglect in prosecuting it, CPLR 205(a) does not apply in this action, and without the six-month extension afforded by CPLR 205(a), this action is time-barred. On August 23, 2016, a judgment was entered in this action in favor of the defendants and against the plaintiff dismissing the complaint. The plaintiff appeals.
In an order dated June 30, 2016, appealed from by the plaintiff in a companion appeal (Appellate Division Docket No. 2016-09794; decided herewith), the Supreme Court granted the defendants' motions to dismiss the complaint in the 2015 action, on the ground that the six-month period for commencing the 2015 action beyond the statute of limitations was not available to the plaintiff, as the 2015 action had been commenced before the 2013 action was dismissed.
II. Legal Analysis
The appeals have been heard and are being decided jointly. They bring to this Court a cornucopia of procedural issues including the substitution of parties, the effect of prior actions pending, the interpretation of the savings provision of CPLR 205(a), and the discretion of courts to correct mistakes in earlier orders under CPLR 5019. For reasons set forth below, we reverse the judgment and reinstate the complaint in this action.
A. The Applicability of CPLR 205(a)
The statute of limitations for actions sounding in medical malpractice is 2½ years (see CPLR 214-a). The limitations period is measured from the date of the negligent act, omission, or failure complained of (see CPLR 214-a; Rodriguez v Manhattan Med. Group, 77 NY2d 217, 220). However, our law recognizes various tolls and extensions in diverse sections of CPLR article 2 that permit, when applicable, the commencement of actions beyond the bright lines of the limitations periods. The continuous treatment doctrine is the best known toll in the context of medical malpractice actions in that the statute of limitations does not begin to run until the physician's cessation of continuous treatment of the patient (see CPLR 214-a; Cox v Kingsboro Med. Group, 88 NY2d 904, 906; Schwelnus v Urological Assoc. of L.I., P.C., 94 AD3d 971, 973; Gomez v Katz, 61 AD3d 108, 111-112). The one-year foreign object exception is another, measured from the object's actual discovery or the date of the discovery of facts that would reasonably lead to its discovery, whichever of the two is earlier (see CPLR 214-a; Rockefeller v Moront, 81 NY2d 560, 563; Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 431).
For all actions generally, CPLR 205(a) extends the time to commence an action after the termination of an earlier related action, where both actions involve the same transaction or occurrence or series of transactions or occurrences. The statute is not technically a "toll," as it does not stop the underlying statute of limitations from running, but is instead a six-month "extension" of the time for commencing the new action when its qualifying circumstances are present (see generally Matter of Winston v Freshwater Wetlands Appeals Bd., 224 AD2d 160). CPLR 205(a) " serves the salutary purpose of preventing a Statute of Limitations from barring recovery where the action, at first timely commenced, had been dismissed due to a technical defect which can be [*4]remedied in a new action"' (Hyowon Kim v Cruz, 94 AD3d 820, 821, quoting United States Fid. & Guar. Co. v Smith Co., 46 NY2d 498, 505; see Marrero v Crystal Nails, 114 AD3d 101, 108-109).
CPLR 205(a) is subject to three unyielding conditions. First, the new action will be permitted only if it would have been timely if commenced at the time of the prior action. Second, the new action must be commenced within six months of the termination of the prior action. Third, the prior action must be terminated for reasons other than its voluntary discontinuance, the failure to obtain personal jurisdiction over the defendant, neglect to prosecute, or a final judgment upon the merits (see CPLR 205[a]). The six-month extension applies regardless of how long the prior action had been pending and regardless of how far the parties are beyond the limitations period, so long as the prior action was itself timely. Dismissals for neglect to prosecute are specifically exempted from the saving provisions of CPLR 205(a), since in cases where there are dismissals for delays, disregard for scheduling orders, lack of diligence, inaction, and laxity, "it is not acceptable to permit plaintiffs to start all over again, after the statute of limitations has expired" (Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.], 5 NY3d 514, 521). Dismissals for neglect to prosecute are to "be a serious sanction, not just a bump in the road" (id. at 521).
While the various exceptions to CPLR 205(a) are common enough to almost swallow the rule, there are circumstances where prior actions are dismissed for reasons that do not preclude the ameliorative provisions of the statute from having operative effect. One such reason, as relevant here to the 2013 action, is when the prior action is dismissed because the plaintiff lacks the capacity to sue and a new action involving the same subject matter is commenced by a proper plaintiff with capacity (see CPLR 3211[a][5]; Carrick v Central Gen. Hosp., 51 NY2d 242, 249; George v Mt. Sinai Hosp., 47 NY2d 170, 177; Snodgrass v Professional Radiology, 50 AD3d 883, 884; Lambert v Sklar, 30 AD3d 564, 566; Mendez v Kyung Yoo, 23 AD3d 354, 355; Freedman v New York Hosp. Med. Ctr. of Queens, 9 AD3d 415, 416; Chase Manhattan Bank v Wolowitz, 272 AD2d 428, 429; Krainski v Sullivan, 208 AD2d 904; Tellez v Saranda Realty, 197 AD2d 439; Ballav v Deepdale Gen. Hosp., 196 AD2d 520).
The appeals currently before us involve the question of whether the Supreme Court directed the dismissal of the 2013 action because of neglect to prosecute. If so, then the six-month extension for the plaintiff to commence a new action does not apply. If, however, the court did not direct dismissal of the 2013 action for neglect to prosecute, then the six-month extension of CPLR 205(a) does apply. Complicating the issue is the failure of the court to set forth in its order dated November 6, 2015, the reason that it was directing dismissal of the complaint in the 2013 action. The court, during oral argument on both September 28, 2015, and November 6, 2015, stated that the 2013 action was subject to dismissal for being a "nullity." On the other hand, in the order dated June 6, 2016, the court gave a different reason, when it explained that the 2013 action had been dismissed for "failure to prosecute."
Before mid-2008, CPLR 205(a) contained no language requiring judges and justices to identify specific evidence of neglect when dismissing actions for the neglect to prosecute, whether the dismissal is obtained under CPLR 3216 "or otherwise." Effective July 7, 2008, the statute was amended to require that courts dismissing actions for neglect to prosecute "set forth on the record the specific conduct constituting the neglect, which conduct shall demonstrate a general pattern of delay in proceeding with the litigation" (2008 McKinney's Session Law News of NY, ch 156, § 1 at 765). The legislative import of the statutory amendment was to help assure that actions be dismissed only upon there being evidence of a pattern of delay, and to require a description of the neglectful conduct in the order of dismissal (see Bank of N.Y. Mellon v Slavin, 156 AD3d 1073, 1074; Familio v Hersh, 150 AD3d 1203; Wells Fargo Bank, N.A. v Eitani, 148 AD3d 193, 198-199; Zulic v Persich, 106 AD3d 904, 905). The 2008 amendment clarifies the basis for neglect dismissals and assures a more detailed record for purposes of any reargument or appeal. The language of CPLR 205(a) does not address, as relevant here, whether the record of specific neglectful conduct must be set forth only in the actual order of dismissal, or whether a subsequent order in a related action may do so with equal legal force and effect. The defendants argue that the language in the order dated June 6, 2016, which described the reason for the dismissal of the 2013 action as being the plaintiff's failure to prosecute, satisfies the requirement of CPLR 205(a). The plaintiff, of course, advances a more literal interpretation of the statute, that the order dated November 6, 2015, dismissing the 2013 action is the order which should have set forth a description of the plaintiff's neglectful conduct if, [*5]in fact, the complaint in the 2013 action was dismissed for neglect to prosecute, and that absent such a description in that order, the plaintiff was free to commence another action within the six-month window of CPLR 205(a). These considerations are of first impression to our Court and cannot be addressed without viewing them in the context of CPLR 5019(a)
B. The Effect of CPLR 5019(a)
In addressing the issue of whether the order dated June 6, 2016, in this action can appropriately supplement the reasoning behind the order dated November 6, 2015, directing the dismissal of the 2013 action, we hold that the later order cannot properly be used for setting forth the specific conduct constituting neglect in the 2013 action in satisfaction of the statutory requirement of CPLR 205(a). We do so for four separate reasons. Each involves CPLR 5019(a).
CPLR 5019(a) is a quiet and infrequently used statute, but one that serves a sometimes necessary purpose. In the main, it provides that a judgment or order shall not be stayed, impaired, or affected by any mistake, defect, or irregularity, so long as no substantial right of a party is affected. Whereas CPLR 2001 permits a court at any stage of an action to disregard a mistake, omission, defect, or irregularity of a party that does not affect the substantive right of another party (see Northern Blvd Corona, LLC v Northern Blvd Prop., LLC, 157 AD3d 893; HSBC Bank USA, N.A. v Simmons, 125 AD3d 930, 931; Adams v Fellingham, 52 AD3d 443, 444; Matter of Rospigliosi v Abbate, 31 AD3d 648, 650), CPLR 5019(a) is a corresponding provision that permits the correction of mistakes, defects, and irregularities committed by the court itself (see Kiker v Nassau County, 85 NY2d 879, 881; Bessa v Anflo Indus., Inc., 148 AD3d 974, 977; US Bank, N.A. v Steele, 142 AD3d 1161, 1163; Matter of Pulte Homes of N.Y., LLC v Planning Bd. of Town of Carmel, 136 AD3d 643, 644; U.S. Bank N.A. v Eaddy, 109 AD3d 908, 910).
CPLR 5019(a) provides that "[a] trial or an appellate court may require the mistake, defect, or irregularity to be cured," meaning that a trial court may unilaterally and affirmatively correct minor mistakes, defects, or irregularities in its orders or judgments, after the fact, so long as the correction does "not affect[ ] a substantial right of a party." When properly utilized, the statute has a utilitarian benefit. It operates as a safety net for jurists to correct clerical-type errors that may be contained in orders or judgments, such as mathematical errors in calculations (see Berry v Williams, 87 AD3d 958, 960; Freedman v City of New Rochelle, 274 AD2d 447, 448; Al-Ev Constr. Corp. v Ahern Maintenance & Supply Corp., 141 AD2d 591, 592), corrections to the statutory rate of interest (see Kiker v Nassau County, 85 NY2d at 881), and the proper spelling of names (see NYCTL 2011-A Trust v Kahn, 163 AD3d 837, 839; HSBC Bank USA, N.A. v Dalessio, 137 AD3d 860, 862). Conversely, CPLR 5019(a) cannot be used by courts to sua sponte correct errors that involve new exercises of discretion or fact-finding (see Matter of Fiorillo v New York State Dept. of Envtl. Conservation, 162 AD2d 929, 930), vacating prior orders or judgments (see Carter v Johnson, 110 AD3d 656, 659; JSO Assoc., Inc. v Price, 104 AD3d 737, 738; Adams v Fellingham, 52 AD3d at 444), reconsidering the merits of summary judgment (see Merriwether v Osborne, 66 AD3d 851), or adding the words that a judgment is "with prejudice" (Johnson v Societe Generale S.A., 94 AD3d 663, 664 [internal quotation marks omitted]; see Roth v South Nassau Communities Hosp., 239 AD2d 331; Dependable Printed Circuit Corp. v Mnemotron Corp., 22 AD2d 911).
The statute presupposes that a court will invoke its provisions in actions or proceedings to correct mistakes, defects, or irregularities that come to the court's attention in the same action or proceeding under the same index number. The statute contains no language suggesting that it may be invoked in one action to correct mistakes, defects, or irregularities in another action under a different index number. Indeed, we are concerned that if CPLR 5019(a) is interpreted as permitting a cross-pollination of separate actions in such a fashion, courts may feel invited to revisit previously determined orders or judgments in other actions and change them in some manner so as to render them less conclusive.
Of course, while a court must be circumspect in correcting its mistakes sua sponte, more latitude may exist if the correction of an order or judgment is the subject of notice to the parties with an opportunity to be heard. A colorable argument can be made that under the circumstances of this case, it should not matter whether the Supreme Court's explanation for the dismissal of the complaint in the 2013 action was set forth in the order dated November 6, 2015, or in the June 6, 2016, order directing the dismissal of the complaint in this action. After all, both actions involved overlapping parties and identical causes of action, and any disputes over the reason for the dismissal [*6]of the complaint in the 2013 action were briefed by the parties in connection with the defendants' motions to dismiss that were granted in this action. However, that argument brings us to the second reason why, under the unique circumstances of this case, we reject the court's use of the June 6, 2016, order in this action to, in effect, amend the order dated November 6, 2015, in the 2013 action. During colloquy between the court and counsel on both September 28, 2015, and November 6, 2015, in connection with the defendants' cross motions to dismiss the complaint in the 2013 action, the court made clear its view that the dismissal of the 2013 action was warranted on the ground that it was a "nullity" since an already deceased person was a named plaintiff. That reasoning, which was set forth on the record on the same day as the execution of the order dated November 6, 2015, may arguably have more contemporaneous weight and effect than the court's later, and wholly different, reason given in the order dated June 6, 2016, for dismissing the 2013 action. It was not until months after the court directed that the 2013 action be dismissed that the court, for the purpose of justifying the dismissal of the complaint in this action, stated that the plaintiff's neglect of prosecution of the 2013 action was the basis for the dismissal of the 2013 action. The inconsistency in the court's stated reasonings for dismissal, comparing the September 28, 2015, and November 6, 2015, colloquies with the language of the June 6, 2016, order, underscores why the judicial correction of mistakes, defects, or irregularities in orders or judgments should be performed within a case carrying the same index number as the order or judgment being corrected.
Even if the Supreme Court was permitted in this action to "correct" the order dated November 6, 2015, in the 2013 action, that authority is still limited to the correction of clerical errors rather than errors of substance (see Matter of Empire State Pipeline v Town of Arcadia Assessor, 270 AD2d 830, 831; Bolger v Davis, 127 AD2d 979). The court's explanation that the 2013 action had been dismissed not because it was a legal nullity, but for neglect to prosecute, is not a mere clerical change to the order, but a substantive one. CPLR 205(a) requires that in dismissing actions for neglect of prosecution, courts must describe the pattern of conduct constituting the neglect. The order dated November 6, 2015, never contained any such language. Absent such language at that time, the plaintiff was logically and understandably free under the statute to commence a subsequent action against the same defendants, over the same transactions or occurrences, within the six-month grace period of CPLR 205(a). The court's explanation several months later, in the order dated June 6, 2016, in this action, that the dismissal of the complaint in the 2013 action was for neglect to prosecute had the practical and prejudicial effect of retroactively depriving the plaintiff of the right under CPLR 205(a) to proceed with a new action that was previously and otherwise authorized by the statute. There would be an innate unfairness if, after a subsequent action is commenced, the court can be allowed to change the terms of a dismissal of a prior action through a later-created record, and thereby divest a plaintiff of remedies that were properly and previously available by operation of CPLR 205(a).
In any event, a substantive change to a prior order or judgment, which is at issue here, cannot be made under CPLR 5019(a), even with notice to the parties and an opportunity to be heard. Trial courts have no revisory or appellate authority to correct by amendments any errors of substance in prior orders or judgments (see Herpe v Herpe, 225 NY 323, 326; HSBC Bank USA, N.A. v Simmons, 125 AD3d at 931; Carter v Johnson, 110 AD3d at 658; Merriwether v Osborne, 66 AD3d at 851; Adams v Fellingham, 52 AD3d at 444; Matter of Owens v Stuart, 292 AD2d 677, 678-679; Reisman v Coleman, 226 AD2d 693; Osamwonyi v Grigorian, 220 AD2d 400, 401; First Natl. City Bank v Elsky, 62 Misc 2d 880, 881 [Civ Ct, New York County]). "Where a movant seeks to change an order or judgment in a substantive manner, rather than correcting a mere clerical error, CPLR 5019(a) is not the proper procedural mechanism to be employed, and relief should be sought through a direct appeal or by motion to vacate pursuant to CPLR 5015(a)"' (Matter of Pulte Homes of N.Y., LLC v Planning Bd. of Town of Carmel, 136 AD3d at 644, quoting Chmelovsky v Country Club Homes, Inc., 111 AD3d 874, 875; see Herpe v Herpe, 225 NY at 326; Johnson v Societe Generale S.A., 94 AD3d at 664; Goldberger v Eisner, 90 AD3d 835, 836; Mount Sinai Hosp. v Country Wide Ins. Co., 81 AD3d 700, 701). Alternatively, a substantive correction to an order or judgment can be accomplished by a party's timely motion to reargue under CPLR 2221(d) (see e.g. Fleming v Sarva, 15 Misc 3d 892, 895-896 [Sup Ct, Nassau County]), though no such motion was ever made regarding the November 6, 2015, order in the 2013 action.
Accordingly, we do not recognize as valid or enforceable the Supreme Court's explanation in the order dated June 6, 2016, in this action, that the November 6, 2015, order directing [*7]the dismissal of the complaint in the 2013 action had been for the plaintiff's neglect to prosecute. Absent explanation in the order of November 6, 2015, itself describing the plaintiff's pattern of delay and neglect to prosecute, the plaintiff was free under CPLR 205(a) to commence, and thereafter prosecute, another action against the defendants.
C. The Substitution Statute is Not Applicable Where the Death of a Named Plaintiff Precedes the Commencement of the Action
The defendants argue that the plaintiff's motion to substitute herself as administrator of the decedent's estate was not made within a reasonable time, and is evidence of a neglect to prosecute as a matter of law, independent of any explanation given by the Supreme Court.
There is no dispute that when the 2013 action was commenced on December 26, 2013, the decedent, one of the two named plaintiffs, had already died. The action could not be maintained solely by the plaintiff, as her cause of action for loss of consortium, services, and society is merely derivative of the alleged injuries incurred by the decedent (see Liff v Schildkrout, 49 NY2d 622, 632; Taggart v Costabile, 131 AD3d 243, 257; Klein v Metropolitan Child Servs., Inc., 100 AD3d 708, 711; Paisley v Coin Device Corp., 5 AD3d 748, 750). When the plaintiff's counsel learned of the decedent's death, he sought to cure the defect by moving pursuant to CPLR 1021 to substitute the plaintiff in the 2013 action, in the decedent's place and stead, in her capacity as administrator of the decedent's estate, and in addition to her separate derivative cause of action.
CPLR 1015(a) permits the substitution of proper parties when a plaintiff or defendant dies. Relatedly, CPLR 1021 defines the procedural mechanisms for seeking a substitution of successor or representative parties, and for the dismissal of actions where substitutions are not timely sought (see e.g. Riedel v Kapoor, 123 AD3d 996; Giroux v Dunlop Tire Corp., 16 AD3d 1068). CPLR 1015(a) expressly permits substitution upon the death of a "party." No extended analysis is needed to conclude that the decedent was never a "party" in the 2013 action, as an individual party plaintiff must, by definition, be a living person (see Wendover Fin. Servs. v Ridgeway, 93 AD3d 1156, 1157; Marte v Graber, 58 AD3d 1, 4; Everhome Mtge. Co. v Sirignano, 40 Misc 3d 1223[A], 2013 NY Slip Op 51285[u], *4 [Sup Ct, Suffolk County]). Therefore, CPLR 1015(a) and 1021 presuppose, when read in conjunction with one other, that an action must be commenced by a living person against a living defendant, that one of the parties subsequently dies, and that substitution is then sought after the post-commencement death of that party (see Matter of Foreclosure of Tax Liens, 165 AD3d 1112, 1116; Vello v Liga Chilean de Futbol, 148 AD3d 593, 593-594; JP Morgan Chase, NA v Charles, 46 Misc 3d 1216[A], 2015 NY Slip Op 50100[U], *1 [Sup Ct, Kings County]; JP Morgan Chase Bank, N.A. v Hyman, 46 Misc 3d 1203[A], 2014 NY Slip Op 51837[U], *2 [Sup Ct, Kings County]; Yamoah v Evangelista, 43 Misc 3d 1222[A], 2014 NY Slip Op 50747[U], *1 [Sup Ct, Dutchess County]; HSBC Bank USA, N.A. v Brunson, 40 Misc 3d 1219[A], 2013 NY Slip Op 51230[U], *2 [Sup Ct, Kings County]).
Here, as there was no procedurally viable motion by the plaintiff to substitute for a "party" due to the decedent's pre-commencement death, the issue of whether the purported substitution motion was filed within a reasonable time is irrelevant (see CPLR 1021; Tokar v Weissberg, 163 AD3d 1031, 1032). The timeliness or untimeliness of the motion becomes a non-issue, and, contrary to the defendants' arguments, cannot provide a basis, standing alone, for concluding that there has been a neglect to prosecute and thereby bar the commencement of a subsequent action under CPLR 205(a). Moreover, since the decedent should not have been individually named as a plaintiff in the 2013 action, there was clearly a lack of capacity to sue, and the 2013 action should have been dismissed on that ground pursuant to CPLR 3211(a)(3) (see George v Mt. Sinai Hosp., 47 NY2d at 177; Robles v Brooklyn-Queens Nursing Home, Inc., 131 AD3d 1032, 1033; Rumola v Maimonides Med. Ctr., 37 AD3d 696, 697; Mendez v Kyung Yoo, 23 AD3d at 355). Where an action is dismissed for lack of capacity to sue, which is neither a dismissal on the merits nor a dismissal for neglect to prosecute, the plaintiff is entitled to the benefit of the six-month saving provision of CPLR 205(a) (see Carrick v Central Gen. Hosp., 51 NY2d at 252; Snodgrass v Professional Radiology, 50 AD3d at 884; Lambert v Sklar, 30 AD3d at 566).
D. The 2013 Action Was Never a Nullity" for Dismissal on That Basis
The Supreme Court set forth conflicting analyses regarding the actual reason for [*8]directing the dismissal of the complaint in the 2013 action. During court colloquies conducted on September 28, 2015, and November 6, 2015, the court described the 2013 action as a "nullity," as the decedent already was deceased when the 2013 action was commenced. Neither that reason, nor any other, was included in the order dated November 6, 2015, directing the dismissal of the 2013 action. Later, in the order of June 6, 2016, directing the dismissal of the complaint in this action, the court explained its dismissal of the 2013 action on the competing ground that the plaintiff had neglected to prosecute the 2013 action until the circumstances of the decedent's death became known to all counsel and the court by July of 2015.
Even if the Supreme Court had expressly dismissed the complaint in the 2013 action as a "nullity," such determination would have been incorrect. The Court of Appeals in George v Mt. Sinai Hosp. ( 47 NY2d at 170), addressed this issue head-on 40 years ago. There, as here, a medical malpractice action had been commenced on behalf of an already deceased patient, and an estate representative sought to commence a second action after the statute of limitations had expired but within the six-month window of CPLR 205(a). The Court of Appeals noted that CPLR 205(a), by its very nature, exists to permit the commencement of a subsequent action when the earlier action has been dismissed because of some fatal flaw. The statute bestows such an allowance upon plaintiffs because the first action, though dismissed, nonetheless provides the defendants with timely notice of the transactions and occurrences on which the subsequent action is based (see George v Mt. Sinai Hosp., 47 NY2d at 176), thereby ameliorating any prejudice to the defense. The Court of Appeals held that the action commenced in the name of a decedent was not a "nullity," but rather, a prior action subject to grounds for dismissal and within the ambit of CPLR 205(a). The Court of Appeals explained that where the defect in the prior action involves the identity of the named plaintiff, "it [is] not the type of defect which precludes the application" of CPLR 205(a) (id. at 178; see also Snodgrass v Professional Radiology, 50 AD3d at 884; Lambert v Sklar, 30 AD3d at 566; Mendez v Kyung Yoo, 23 AD3d at 355; Freedman v New York Hosp. Med. Ctr. of Queens, 9 AD3d at 416). The Court of Appeals reiterated the same reasoning one year later in Carrick v Central Gen. Hosp. (51 NY2d 242), which involved the commencement of an action by a decedent's spouse before receiving letters of administration, and her right after the dismissal of that action to commence a second action under CPLR 205(a) (see id. at 249). Here, since the defect in the 2013 action was in the identity of one of the named plaintiffs, the plaintiff in this action is entitled to the extension provision of CPLR 205(a) in determining the issue of the action's timeliness (see George v Mt. Sinai Hosp., 47 NY2d at 178; Goodman v Skanska USA Civ., Inc., 169 AD3d 1010, 1012; Mendez v Kyung Yoo, 23 AD3d at 355).
III. Miscellaneous
The parties' remaining contentions are either without merit, or are rendered academic by our determination.
IV. Conclusion
The plaintiff, pursuant to CPLR 205(a), was entitled to commence this action upon the termination of the 2013 action. The order dated November 6, 2015, directing the dismissal of the 2013 action did not set forth on the record a specific pattern of conduct constituting a neglect to prosecute required by CPLR 205(a) to preclude the commencement of subsequent litigation against the defendants, the plaintiff's nonviable substitution motion does not constitute evidence of neglect to prosecute, and the erroneous naming of the decedent as a plaintiff in the 2013 action does not preclude the application of CPLR 205(a). In addition, CPLR 5019(a) is inapplicable, as the June 6, 2016, order cannot be utilized to substantively change the order dated November 6, 2015.
Accordingly, the judgment entered August 23, 2016, is reversed, on the law, the complaint is reinstated, the motion of the defendants Jonathan Schor and Staten Island University Hospital and the separate motion of the defendants Marisa Berry and Carmel Richmond Healthcare and Rehabilitation Center pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against each of them are denied, and the order dated June 6, 2016, is modified accordingly.
MILLER, HINDS-RADIX and CONNOLLY, JJ., concur.
ORDERED that the judgment entered August 23, 2016, is reversed, on the law, with one bill of costs, the complaint is reinstated, the motion of the defendants Jonathan Schor and Staten [*9]Island University Hospital and the separate motion of the defendants Marisa Berry and Carmel Richmond Healthcare and Rehabilitation Center pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against each of them are denied, and the order dated June 6, 2016, is modified accordingly.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1:The Supreme Court expressed concern during the November 6, 2015, conference that after the 2013 action had been commenced, the plaintiffs' counsel had exchanged authorizations for various hospital, medical, medicare, and collateral source records that were purportedly signed by the decedent and notarized after the date of his death, and the plaintiffs' counsel had made representations to the court during prior appearances that the plaintiffs were ready to proceed with depositions when, in fact, the decedent was dead. The plaintiffs' counsel explained the authorizations as a product of a rogue paralegal who had since been fired from the law firm.