# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 34
ACE Securities Corp., &c.,
     Appellant,
    v.
DB Structured Products, Inc.,
     Respondent.

Zachary W. Mazin, for appellant.
William T. Russell, Jr., for respondent.
National Credit Union Administration et al., Patrick M. Connors, Robert Hockett et al., Adam Plotch, amici curiae.

DiFIORE, Chief Judge:

When a timely-commenced action has been dismissed on certain non-merits grounds, CPLR 205 (a) allows "the plaintiff" in that action "or, if the plaintiff dies," the "executor or administrator" of the plaintiff's estate, six months to commence a new action

- 1 -

based on the same transaction or occurrence. The new action will be deemed timely based on the commencement of the prior action. Here, after the dismissal of a prior action brought by two certificateholders (*see ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc.*, 25 NY3d 581 [2015])—and after the statute of limitations expired—plaintiff HSBC Bank USA, National Association, in its capacity as trustee of a residential mortgage-backed securities (RMBS) trust, commenced this action against the sponsor, invoking CPLR 205 (a). Because HSBC was not "the original plaintiff" in the prior dismissed action (*Reliance Ins. Co. v PolyVision Corp.*, 9 NY3d 52, 57 [2007]), we agree with the courts below that HSBC could not invoke CPLR 205 (a) to avoid dismissal of this time-barred claim, and we therefore affirm.

As these events were the subject of a prior appeal involving this trust, the facts are familiar (*see ACE Sec. Corp.*, 25 NY3d 581). Defendant DB Structured Products, Inc., as sponsor of the underlying RMBS transaction, purchased over 8,800 mortgage loans and sold them to an affiliate, ACE Securities Corp., pursuant to a Mortgage Loan Purchase Agreement (MLPA). In the MLPA, the sponsor made various representations and warranties regarding the quality and characteristics of the pooled loans as of the closing date—March 28, 2006. ACE Securities then deposited the loans into a trust, and the loans served as collateral for approximately $500 million in certificates issued by the trust— which in turn pay principal and interest to certificateholders based on the funds generated by the underlying mortgages. Pursuant to a pooling and servicing agreement (PSA), ACE Securities transferred to HSBC as trustee all of its rights in the trust and arising under the MLPA.

The PSA contained a repurchase protocol provision that governed in the event of a breach of the relevant representations and warranties by the sponsor. Pursuant to the repurchase protocol, if HSBC—as trustee—discovered a material defect or breaching loan, it was required to "promptly notify the Sponsor and the Servicer," request that the sponsor cure within 60 days and, if not cured, the sponsor must repurchase the nonconforming loan within 90 days of HSBC's notification. In other words, through this provision, the parties agreed that the sponsor must either cure a claimed defect or repurchase a nonconforming loan, and the parties further agreed that the cure or repurchase remedy would be the "sole remedy" available to the trustee.

In January 2012, two certificateholders, RMBS Recovery Holdings 4, LLC and VP Structured Products, LLC—independent investment funds holding 25% of the trust's voting certificates—notified HSBC of breaches allegedly uncovered through a forensic review of the pooled loans. The certificateholders demanded that HSBC pursue repurchase of the entire pool by the sponsor and urged HSBC to seek a tolling agreement in light of the impending expiration of the statute of limitations. HSBC did neither. Consequently, the two certificateholders—assertedly on behalf of the trust—attempted to commence an action against the sponsor through the filing of a summons and notice in March 2012, exactly six years from the closing date, alleging breach of the representations and warranties and naming HSBC as a nominal defendant. Six months later, following the sponsor's demand for a complaint, HSBC filed a complaint on behalf of the trust, purporting to substitute as plaintiff for the certificateholders.

The sponsor moved to dismiss, contending that HSBC's complaint was untimely and that the certificateholders' summons with notice did not validly commence the action because they failed to comply with the sole remedy repurchase protocol before commencing suit. Supreme Court denied the sponsor's motion, reasoning that—although it was "undisputed that these certificateholders lacked standing . . . under the PSA's no-action clause"—the relevant "breach" was the sponsor's failure to comply with the repurchase demand and, thus, HSBC's cause of action accrued as of that date and its complaint was timely (40 Misc 3d 562, 564, 568 [Sup Ct, NY County 2013]). The Appellate Division reversed and granted the sponsor's motion to dismiss, determining that any claim for breach accrued on the closing date of the RMBS transaction and HSBC's complaint—filed more than six years later (*see* CPLR 213 [2])—was time-barred (112 AD3d 522 [1st Dept 2013]). With respect to the certificateholders' summons and notice, the Appellate Division concluded that the action was not validly commenced because the certificateholders failed to comply with the contractual condition precedent to suit as they did not provide the sponsor with the requisite pre-suit notice and opportunity for cure and repurchase and, in any event, the certificateholders lacked standing to sue on behalf of the trust under the PSA's "no-action" clause (112 AD3d at 523).[1]

---

[1] In relevant part, the no-action clause provides that certificateholders have no right to institute any suit or action unless the trustee is given a "written notice of default," holders of at least 25% of the voting rights request the trustee institute an action and offer reasonable indemnity against the costs and expenses, and the trustee fails to pursue an action. The Appellate Division concluded that the "defaults" referenced in the PSA to which certificateholders may give notice and subsequently commence suit are those that "concern failures of performance by the servicer or master servicer only," not breaches of the representations and warranties by the sponsor (112 AD3d at 523).

This Court affirmed (*see* 25 NY3d 581).  We explained that any claim for breach of the representations and warranties accrued on the transaction closing date because the sponsor warrantied characteristics of the mortgage loans at the time of closing (*see id.* at 595).  Rejecting the argument that the sponsor's cure or repurchase obligation was a separate promise of the loans' future performance, we determined that the repurchase protocol was merely a contractually agreed-upon remedy for the inclusion of nonconforming loans in the trust (*see id.* at 595-597).  Thus, although compliance with the repurchase protocol was a "contractual condition precedent to suit," it did not affect the accrual of the cause of action and, as such, any claim for breach of the representations and warranties accrued on the closing date (*id.* at 589; *see id.* at 597-599).  HSBC's complaint, filed more than six years after that date (*see* CPLR 213 [2]), was therefore untimely.  Further, although the certificateholders filed their summons with notice on the final day of the limitations period, we agreed with the Appellate Division that the "certificateholders did not validly commence th[e] action because they failed to comply with the contractual condition precedent to suit" since they did not give the sponsor the requisite notice and opportunity to cure or repurchase (25 NY3d at 589).[2]

While an appeal of the Appellate Division's dismissal of the certificateholders' action was pending before this Court, HSBC commenced the instant action against the sponsor seeking to "revive" the certificateholders' action pursuant to CPLR 205 (a).  HSBC

---

[2] We have repeatedly reaffirmed that compliance with similar repurchase protocols is a procedural condition precedent to suit (*see U.S. Bank Natl. Assn. v DLJ Mtge. Capital, Inc.*, — NY3d —, 2022 NY Slip Op 01866 [2022]; *U.S. Bank N.A. v DLJ Mtge. Capital, Inc.*, 33 NY3d 72, 80 [2019]).

asserted that the certificateholders' action was timely commenced and based on the same transaction, and that it had been dismissed less than six months before on grounds that did not preclude CPLR 205 (a) relief. Thus, HSBC contended that CPLR 205 (a) authorized commencement of the present action, which would otherwise be barred by the statute of limitations.

The sponsor moved to dismiss HSBC's complaint, arguing in relevant part that the action was untimely and CPLR 205 (a) did not apply because HSBC was not the same "plaintiff" as the certificateholders who commenced the prior action. Supreme Court agreed and granted the sponsor's motion (52 Misc 3d 343, 346 [Sup Ct, NY County 2016]). The Appellate Division affirmed (177 AD3d 493, 493-494 [1st Dept 2019]), and we granted HSBC leave to appeal (35 NY3d 911 [2020]).

Commonly known as the "savings statute," CPLR 205 (a) provides that,

> "[i]f an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, *the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator,* may commence a new action upon the same transaction or occurrence . . . within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action . . . " (emphasis added).

"The effect of the statute is quite simple: if a timely brought action has been terminated for any reason other than one . . . specified in the statute, the plaintiff may commence another action based on the same transactions or occurrences within six months of the dismissal of

the first action" and obtain the benefit of the prior timely filing for statute of limitations purposes (*George v Mt. Sinai Hosp.*, 47 NY2d 170, 175 [1979]).

Here, HSBC acknowledges that it is not the same entity as the plaintiffs that commenced the previously dismissed action—the certificateholder investment funds. HSBC argues that this new action may nevertheless be deemed timely under CPLR 205 (a) because HSBC, as trustee, is only "nominally" different from the plaintiffs in the original action insofar as it seeks to enforce the "same rights" as the certificateholders—namely, those of the RMBS trust itself.

When presented with a question of statutory interpretation, as here, our "'primary consideration is to ascertain and give effect to the intention of the [l]egislature,'" the clearest indicator of which is the statutory text (*see Matter of Marian T. [Lauren R.]*, 36 NY3d 44, 49 [2020], quoting *Matter of Lemma v Nassau County Police Officer Indem. Bd.*, 31 NY3d 523, 528 [2018] [quotation marks and citation omitted]; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Any construction that would render a portion of the statute superfluous must be avoided (*see Matter of Lemma*, 31 NY3d at 528; *Majewski*, 91 NY2d at 587). Moreover, "'[w]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded'" (*Town of Aurora v Village of E. Aurora*, 32 NY3d 366, 372-373 [2018], quoting *Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs.*, 5 NY3d 36, 43 [2005]; *see Kimmel v State of New York*, 29 NY3d 386, 394 [2017]).

HSBC's argument in favor of applying CPLR 205 (a) cannot be reconciled with the text of the savings statute, the public policy underlying the provision, or our precedent. We have long recognized that "the benefit provided by [CPLR 205 (a)] is *explicitly*, and *exclusively*, bestowed on 'the plaintiff' who prosecuted the initial action" except in the limited scenario where "the plaintiff" dies, the cause of action survives, and an administrator or executor of the deceased plaintiff's estate seeks to commence a new action based on the same occurrence (*Reliance*, 9 NY3d at 57 [emphasis added]). That is, the savings statute "applies *only* where the second action is brought by the same plaintiff" or an estate representative (*Streeter v Graham & Norton Co.*, 263 NY 39, 43 [1933] [emphasis added]).

Construing the term "the plaintiff" in CPLR 205 (a) to authorize commencement of a new action by any entity seeking to pursue the "same rights" as the prior plaintiff—as HSBC urges us to do—would render the statutory language permitting commencement of new actions by administrators and executors superfluous. An estate representative raising a claim on behalf of a deceased plaintiff is generally, as a matter of course, seeking to vindicate the rights of the original and now-deceased plaintiff. Had the legislature intended the statutory reference to "the plaintiff" to impliedly and broadly allow any entity seeking to vindicate the "same rights" as the original plaintiff or any entity claiming to represent the same "real party in interest" to benefit from CPLR 205 (a), there would be no need for the statute to specifically bestow such benefit on executors and administrators. Yet, for over a century (*see* Code of Civil Procedure § 405 [1895]), an entity different than the

original plaintiff has been permitted to rely on the savings statute to commence a subsequent action only in the circumscribed context of a deceased plaintiff's estate.

Where, as here, the legislature has created one statutory exception—executors and administrators—to the general rule that the second action must be commenced by the original plaintiff, we must infer that the legislature did not intend CPLR 205 (a) to broadly apply to any party that seeks to vindicate the same rights. When the legislature intends to extend benefits to other entities that may have interests similar or identical to those of a plaintiff or defendant it has typically said so (*see e.g.* CPLR 203 [b], [c] ["united in interest"]; 205 [b] ["successor in interest"]; 1021 ["successors or representatives"]; 3020 [d] ["parties united in interest"]; 3117 [c] ["representatives or successors in interest"]). The absence of any language in CPLR 205 (a) extending its reach beyond the original plaintiff or an estate representative, coupled with the precise recognition of a single exception, must be considered "meaningful and intentional as . . . the failure of the legislature to include a term in a statute is a significant indication that its exclusion was intended" (*Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55, 60 [2013]).

HSBC nevertheless argues that we have expanded the scope of CPLR 205 (a) beyond its plain terms, asserting that, in *Reliance Ins. Co. v PolyVision Corp.* (9 NY3d 52), we endorsed the application of CPLR 205 (a) whenever successive actions seek to vindicate the "same rights," disregarding the named plaintiff's identity as irrelevant. That is not the case. To the contrary, in *Reliance*, the Court reaffirmed that "the fact that one party commenced an action which is subsequently dismissed, will not serve to justify application of [CPLR 205 (a)] so as to support a later action by a different claimant" (*Reliance*, 9 NY3d

at 57 [internal quotation marks and citation omitted]). There, ten years into litigation against a materials manufacturer on a construction project, it was discovered that the action had been mistakenly brought by a wholly owned subsidiary rather than the parent corporation that actually issued the bonds and held the contracts underlying the suit. After the action was dismissed due to the subsidiary's lack of standing to recover, the parent corporation attempted to recommence, invoking CPLR 205 (a). On a certified question from the Second Circuit, we clarified that CPLR 205 (a) does not permit a corporation to refile an action mistakenly commenced in the name of a different, albeit related, corporation.

In *Reliance*, we acknowledged that, in *George v Mt. Sinai Hosp.* (47 NY2d 170), the Court permitted a suit to proceed under CPLR 205 (a) even though the prior action had been improperly commenced in the decedent's name *after* her death—rather than before—and was then recommenced by the estate administrator. Nonetheless, we explained that *George* did not support application of CPLR 205 (a) in *Reliance* because, "[o]utside of th[e] representative context" of deceased plaintiffs and their estates, "we have not read 'the plaintiff' to include an individual or entity other than the original plaintiff" (9 NY3d at 57; *see Carrick v Central Gen. Hosp.*, 51 NY2d 242, 249 [1980] [a proposed administratrix whose wrongful death action was dismissed because the letters of administration had not yet been issued could recommence under CPLR 205 (a)]; *George*, 47 NY2d at 179). "'To grant the right conferred by [the statute] to a different party plaintiff, representing in part different interests, would require the placing of a construction upon the section plainly beyond its intent and purpose'" (*Reliance*, 9 NY3d at 57, quoting *Streeter*, 263 NY at 44

[rejecting application of saving statute even though the rights sought to be enforced in each action were largely identical, were founded upon the same alleged wrong, and the damages would have passed to the same party]).

Applying these principles to the scenario presented in *Reliance*, the Court observed that the parent corporation "is not [the subsidiary] in a different capacity" and cautioned that allowing the parent corporation to proceed "would open a new tributary in the law . . . breath[ing] life into otherwise stale claims" (9 NY3d at 58). Indeed, rather than expanding the scope of the statute beyond its text, we explained that we must "read CPLR 205(a) as it was written by the [l]egislature and has consistently been applied by this Court," maintaining that the statute applies only in the contexts expressly contemplated by the legislature—namely, where the original plaintiff recommences or where the successive actions involve deceased plaintiffs and their estate representatives (*id.*). This was so despite the fact that, in each of the actions at issue in *Reliance*, "the plaintiff" was seeking to pursue the same "rights" against the manufacturer arising from the parent company's contracts and the error was simply mistakenly filing the action in the name of a subsidiary.

Here, as in *Reliance*, HSBC is admittedly a different entity than the certificateholder plaintiffs. HSBC is neither an administrator or executor for the original plaintiffs, nor can we fairly say that HSBC is the certificateholders just in a "different capacity" (*id.*). To be sure, both actions were purportedly brought "on behalf of the [t]rust" and any recovery from either would ultimately inure to the benefit of all trust certificateholders. However, the PSA authorizes HSBC, as trustee, to enforce the MLPA and the repurchase protocol. In the instant action, HSBC "is seeking to enforce its own, separate rights" as trustee,

"rather than the rights of the [certificateholder] plaintiffs in the original action" (*id.* at 57)—entities that have a limited right to enforce the governing agreements, to the extent the PSA permits them to do so at all; indeed, HSBC now concedes that the certificateholders lacked standing under the relevant contracts to bring the prior action on behalf of the trust.[3]  Nor are HSBC and the certificateholders' interests entirely aligned (*see Streeter*, 263 NY at 44), as evidenced by the requirement that the certificateholders offer HSBC indemnity for legal action taken at their behest.  Finally, to the extent that HSBC argues that it is entitled to the benefit of CPLR 205 (a) under decisions of lower courts addressing the applicability of the statute to bankruptcy trustees, it suffices to note that the propriety of such decisions—which, unlike here, involve trustees appointed pursuant to federal law (*see* 11 USC §§ 701, 1104, 1302)—is not before us.

HSBC is not "the plaintiff" in the prior action and the benefit of CPLR 205 (a) is unavailable to save its untimely complaint.  Contrary to HSBC's contention, this conclusion is consistent with the public policy underpinning the savings statute.  CPLR 205 (a) is a remedial statute that, like its predecessors, is "'designed to insure to *the diligent suitor*'" an opportunity to have a claim heard on the merits (*Malay v City of Syracuse*, 25 NY3d 323, 327 [2015] [emphasis added], quoting *Gaines v City of New York*, 215 NY 533, 539 [1915]) when the suitor has "initiated a suit in time" (*Carrick*, 51 NY2d at 252 [quotation marks and citation omitted]) but the claim was dismissed on some technical,

---

[3]  As noted, in the prior action Supreme Court and the Appellate Division concluded that the certificateholders lacked standing to commence the action on behalf of the trust under the PSA (*see* 112 AD3d at 523; 40 Misc 3d at 564).  We did not reach the issue on the prior appeal (*see* 25 NY3d at 599) and it is not before us now.

non-merits-based ground.  While the savings statute undoubtedly has a "broad and liberal purpose" (*Gaines*, 215 NY at 539) to "ameliorate the potentially harsh effect of the [s]tatute of [l]imitations" (*George*, 47 NY2d at 177; *see Matter of Goldstein v New York State Urban Dev Corp.*, 13 NY3d 511, 521 [2009]), "[t]he important consideration is that, by invoking judicial aid [in the first action], a litigant gives timely notice to [the] adversary of a present purpose to maintain [its] rights before the courts" (*Gaines*, 215 NY at 539).  Where, as here, the litigant commencing the second action is not the original plaintiff, application of CPLR 205 (a) would protect the rights of a *dilatory*—not a diligent—suitor.  By failing to bring the action within the statute of limitations, HSBC signaled that it had no intention to pursue its claims in court.  CPLR 205 (a) does not apply and HSBC's failure to commence an action within the statute of limitations is fatal.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

WILSON, J. (dissenting):

As with numerous pre-2008 residential mortgage-backed securities (RMBS) securitizations in which the depositor represented and warranted that the loans met certain underwriting standards, many of the loans in this pool did not. As a result, the trust—

ultimately meaning the investors—lost hundreds of millions of dollars. There is no question that a timely filed suit gave the depositor notice of that claim, and that the subsequent filing of the same suit with a different nominal plaintiff did not prejudice the depositor. Instead of applying the ameliorative provisions of CPLR 205 (a), the majority allows the depositor to walk away from those representations and warranties. I do not agree.

The majority's decision rests on a statutory misreading and the failure to differentiate between a corporation and a trust. It also disregards our Court's long and consistent interpretation of the legislature's intent and policy determination underlying CPLR 205 (a): that the six-month extension of an applicable limitations period will be granted so long as the prior-filed action provided notice to the defendant(s).

I

The facts and procedural history here are superficially complicated but, as relevant to this appeal, fairly simple. HSBC Bank USA is the trustee (HSBC, or Trustee) of a typical RMBS trust (Trust) created by DB Structured Products (DBSP); the Trust held about $500 million of mortgages. DBSP gave representations and warranties as to the quality of the underlying mortgages and obligated itself to cure or repurchase any breaches as to individual loans among the 8,815 deposited into the Trust. Because of defaults and delinquencies in the underlying mortgages, the Trust lost nearly two-thirds of its value. (*see ACE Securities Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc.*, 25 NY3d 581, 590-591 [2015] ["*ACE I*"]).

At the time the loans were securitized, it was not clear whether the statute of limitations ran from the date the representations and warranties were made, the date on which the Trustee knew or should have known that a representation or warranty as to a particular loan was untrue, or the date on which DBSP breached its obligation to cure or repurchase (*see*, *e.g.*, *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 40 Misc 3d 562, 568, 2013 NY Slip Op 23159 [Sup Ct, NY County 2013] ["The statute of limitations began to run when DBSP improperly rejected the trustee's repurchase demand"], *revd* 112 AD3d 522 [1st Dept 2013], *affd ACE I*, 25 NY3d 581).  It was not until our 2015 decision in *ACE I*, on the appeal of the original iteration of this dispute, that we settled the law by choosing the first of those—meaning that the statute of limitations as to this Trust ran six years from the date the representations and warranties were made, or until March 28, 2012 (*ACE I*, 25 NY3d at 599).

Faced with that uncertainty, two independent investment funds that were certificateholders (*i.e.*, beneficiaries of the Trust)—RMBS Recovery Holdings 4, LLC and VP Structured Products, LLC, which together held 25% of the Trust's voting certificates— gave written notice to the Trustee of breaches of the representations and warranties by DBSP (*id*. at 591).  They asked the Trustee to demand that DBSP cure or repurchase the defective loans and urged the Trustee to seek a tolling agreement because the statute of limitations deadline was approaching (*id*.). The Trustee did not do so (*id*.).

As is typical in RMBS pooling and servicing agreements (PSAs), the PSA here contained a provision (Section 12.04) designed to protect the Trust's assets in the event that the Trustee failed to act.  It provides that a certificateholder may sue in the event of a

"default," provided that the following conditions are met: (i) a certificateholder has given prior written notice to the Trustee of the default; (ii) certificateholders representing at least 25% of the voting rights have requested the Trustee to sue to recover for breaches of the representations and warranties; (iii) those certificateholders have offered to indemnify the Trustee; (iv) the Trustee is given at least 15 days from the offer of indemnity to decide whether to institute it; and (v) the Trustee fails to do so. Importantly, even if all those conditions are met, the certificateholders instituting the suit must do so "for the equal, ratable and common benefit of all Certificateholders." It is undisputed that each of those conditions was met here.

Because of the Trustee's failure to act, on March 28, 2012, the two certificateholders sued DBSP, timely filing a summons with notice (*id.* at 591-592). In view of the PSA's requirement that a suit by a certificateholder could not "disturb or prejudice the rights of the Holders of any other of such Certificates, or seek to obtain priority over or preference to any other such Holder" and must be "for the equal, ratable and common benefit of all Certificateholders," the lawsuit was expressly commenced as "*a derivative action on behalf of the Trust*" (emphasis added).

On September 12, 2012, the Trustee sought to substitute itself for the certificateholders and filed a complaint on the Trust's behalf. The Appellate Division dismissed the lawsuit without prejudice, giving three reasons: (1) DBSP was contractually entitled to 60-day and 90-day periods for cure and repurchase, which had not elapsed by the date the suit was commenced, which the Court deemed to be conditions precedent, rendering the lawsuit a "nullity"; (2) the PSA's Section 12.03's "no-action" provision

deprived the certificateholders of "standing" to sue on behalf of the Trust;[1] and (3) the Trustee's attempt to substitute as the plaintiff did not relate back to the original lawsuit filed by the certificateholders, and therefore was untimely (*ACE*, 112 AD3d at 523). Within six months of the Appellate Division's dismissal, the Trustee filed the instant action, which the parties agreed to stay pending the determination of the appeal of the original action to our Court.

We affirmed the dismissal of the original action on a different ground: the breach occurred when the allegedly false warranties and representations were initially made—*i.e.*, when the MLPA was executed (*ACE I*, 27 NY3d at 581). In the course of so holding, we determined that the cure or repurchase obligation was *not* a condition precedent to suit (*id.* at 597-598). We expressly declined to address the issues of "standing" or relation back (*id.* at 599).

Thereafter, Supreme Court dismissed the instant action, holding that the plaintiff in the original action (the certificateholders) and the plaintiff in the instant action (the Trustee) were not the same party, and therefore CPLR 205 (a)'s tolling provision did not apply (52 Misc 3d 343, 351, 2016 NY Slip Op 26105 [Sup Ct, NY County 2016]). Alternatively, Supreme Court held that if the parties were legally the same, so that CPLR 205 (a) would apply, the undisturbed rulings of the Appellate Division in the first action operated as res judicata to bar the Trustee's claims in the present action (*id*. at 369-371). The Appellate

---

[1] "Standing" is a misnomer. If the "no-action" provision bars the certificateholders from suing, they have no contractual right to sue, which is a distinct issue from that of standing (*see US Bank NA v Nelson*, 36 NY3d 998, 1000-1013 [2020] [Wilson, J. concurring]). The certificateholders clearly have suffered injury in fact.

Division affirmed solely on the ground that because the Trustee and certificateholders were not the same plaintiff, CPLR 205 (a) did not apply (*see US Bank NA v UBS Real Estate Sec., Inc.*, 177 AD3d 493, 493 [1st Dept 2019]).


II

The prior decisions of the Appellate Division do not compel any result here: no decision of the Appellate Division can operate as *stare decisis* for our Court, and there is no suggestion that the Appellate Division's prior decisions operate as claim or issue preclusion. Thus, as the majority concludes, the dispositive legal question presented is whether the Trustee, which filed the second lawsuit, is the same "plaintiff" as the certificateholders, which filed the original lawsuit, under CPLR 205 (a). That provision reads:

> "New action by plaintiff. If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period. Where a dismissal is one for neglect to prosecute the action made pursuant to rule thirty-two hundred sixteen of this chapter or otherwise, the judge shall set forth on the record the specific conduct constituting the neglect, which conduct shall demonstrate a general pattern of delay in proceeding with the litigation" (CPLR 205 [a]).

The majority's statutory analysis is as follows: because CPLR 205 (a) lists executors and administrators, but not trustees, the legislature meant to exclude trustees (majority op at 8-9). That is not how CPLR 205 (a) reads or what it means. The reference to executors and administrators applies only "if the plaintiff dies, and the cause of action survives." A dead person cannot file a new action; the clause referring to the filing of a new action by an executor or administrator (not for an incompetent person or a minor, but a dead person), addresses that limited situation.

The proper question is: what did the legislature mean by allowing "the plaintiff" to commence a new action within six months? Did it mean that, if a plaintiff commenced an action and subsequently became incapacitated, a guardian ad litem could not recommence the action within the six-month period? Did it mean that, if a guardian ad litem commenced an action for a minor, and the minor subsequently reached the age of majority, the (former) minor could not recommence the action within the six-month period? Of course not. The "plaintiff" is the real party in interest, not the nominal entity filing suit for whatever procedural reason may exist.

Turning to the situation here, a corporation is a legal entity that holds both legal and equitable title to its assets. A trust is a legal entity that holds equitable title only; legal title is held by the trustee. Our decision in *Reliance Insurance Co. v PolyVision Corp.* (9 NY3d 52 [2007]), relied on by both parties and the majority, understandably held that, for the purposes of CPLR 205 (a), a parent corporation is not the same entity as its subsidiary. That is a fundamental proposition of corporate law (*see*, *e.g.*, *Berkey v Third Ave. Ry. Co.*, 244 NY 84, 94 [1926]). A parent and subsidiary each has a separate legal existence, each

has the capacity to sue to enforce its rights, and each holds both legal and equitable title to its own assets—which assets are distinct from each other's. Even if a subsidiary is wholly owned by its parent, the two remain separate and independent legal entities, with rights that differ from each other.

At issue here is a trust, not a corporation. Because a trustee has legal title only, it suffers no injury from wrongful depredations of the trust corpus—only the trust beneficiaries do. A trustee is a nominal party. Any suit by a trustee is necessarily for the sole benefit of a trust's beneficiaries; indeed, a trustee has a fiduciary duty to protect their interests in the trust. As we recently recognized in the RMBS context, the trustee "is suing in merely a representative capacity" (*Deutsche Bank Natl. Tr. Co. v Barclays Bank PLC,* 34 NY3d 327, 335 [2019]).

Under Estates, Powers and Trusts Law (EPTL) § 7-2.1 (a), the trust "beneficiary does not take any legal estate in the property but may enforce the trust." Even before the EPTL was amended to allow beneficiaries to sue to enforce the rights of a trust, we held in *Ettlinger v Persian Rug & Carpet Co.* that the beneficiary of a trust "may sue where the trustee refuses . . . because there is no other remedy, and the right of the bondholder, otherwise, will go unredressed" (142 NY 189, 192-193 [1894]). We explained that in an action brought by a trust beneficiary when the trustee has failed to act, a court "takes hold of the trust, dictates and controls its performance, distributes the assets as it deems just, and it is not vitally important which of the two possible plaintiffs sets the court in motion. The bondholders are the real parties in interest; it is their right which is to be redressed, and their loss which is to be prevented" (*id.* at 193; *see also O'Beirne v Allegheny & K. R.*

*Co.,* 151 NY 372, 384 [1897] ["Whatever rights were vested in the trustee through the mortgage instrument, as against the mortgagors, inured to the benefit of the bondholder as the beneficiary, and are enforceable by him, in the case of refusal or neglect on the part of his trustee to act for him upon his making the proper request"]).

Here, however one looks at it, the only real party in interest has always been the Trust, regardless of who the nominal plaintiff was. The Trustee cannot sue to vindicate its own rights—the way a corporate parent can—but can sue to enforce only the rights of the Trust. Likewise, the certificateholders who sued when the Trustee declined to do so expressly sued as "a derivative action on behalf of the Trust." Indeed, they could not have done otherwise, because the PSA—pursuant to Section 12.04, through which they claimed the right to sue—required that any suit by a certificateholder could not "disturb or prejudice the rights of the Holders of any other of such Certificates, or seek to obtain priority over or preference to any other such Holder" and must be "for the equal, ratable and common benefit of all Certificateholders." Simply put, when the certificateholders initiated the suit, they stood in the shoes of the Trustee, seeking to enforce the rights of the Trust when the Trustee failed to act.

In the case of a trust, as opposed to corporate subsidiaries, the identity of the nominal plaintiff seeking to enforce the trust's equitable right is "not vitally important" because in neither the original nor subsequent lawsuit was the nominal plaintiff seeking to enforce its own right; both were seeking to enforce the rights of the trust only. Contrary to the majority's view, this proposition is not limitless; it merely asks whether the real party in interest is the same in the original and subsequent transaction (and whether the claims are

identical).  As we held in *Ettinger*, the situation in which a trust beneficiary sues after a trustee has failed to do so is not different than when a successor trustee sues.

III

CPLR 205 (a), and its predecessors, have long been interpreted as liberally construed so long as the defendant has not been prejudiced by the delay.  Tracing its origins back to the English Limitation Act of 1623, we noted that New York had carried forward the ameliorative purpose of that Act in 1788 and had subsequently amended and recodified it leading up to its incarnation in the Code of Civil Procedure, where its "scope was broadened. It was made applicable, not only where the judgment in the first action was reversed on appeal, but also to every case where the first action was terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute, or a final judgment upon the merits" (*Gaines v New York*, 215 NY 533, 539 [1915]).  We emphasized that the "broad and liberal purpose is not to be frittered away by any narrow construction.  The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts" (*id.*).  We have subsequently reaffirmed that CPLR 205 (a) "shares with its venerable predecessor provisions the 'broad and liberal purpose' of remedying what might otherwise be the harsh consequence of applying a limitations period where the defending party has had timely notice of the action" (*Matter of Goldstein v NY State Urban Dev. Corp.*, 13 NY3d 511 [2009], quoting *Matter of Morris Invs. v Commissioner of Fin. of City of NY*, 69 NY2d 933, 935 [1987]; *see also George v Mt. Sinai Hosp.*, 47 NY2d 170,

177 [1979] ["the function of the CPLR subdivision (205 [a]) is to ameliorate the potentially harsh effect of the Statute of Limitations in certain cases in which at least one of the fundamental purposes of the Statute of Limitations has in fact been served, and the defendant has been given timely notice of the claim being asserted by or on behalf of the injured party.  The statute is a remedial one, and, as Judge Cardozo has explained (in *Gaines*)"]).

Here, had the Trustee filed initially instead of the certificateholders, there is no question the action would be timely under CPLR 205 (a).  Likewise, had the Trustee never sought to take over the suit initially filed by the certificateholders, and the certificateholders instead filed a new action within the six-month period allowed for under CPLR 205 (a), that action would unquestionably have been timely.  It is, ironically, only because the Trustee belatedly saw the wisdom of the certificateholders' initial suit that the trust beneficiaries are barred by this Court's decision from attempting to vindicate their rights.  When, as here,

> "the defect in the prior action did not lie in the means of commencing the action, but rather in the identity of the named plaintiff . . . it was not the type of defect which precludes application of CPLR 205 (subd [a]). The very function of that subdivision is to provide a second opportunity to the claimant who has failed the first time around because of some error pertaining neither to the claimant's willingness to prosecute in a timely fashion nor to the merits of the underlying claim" (*George v Mt. Sinai Hosp.*, 47 NY2d at 178-79).

IV

Nothing about the majority's decision is "broad" or "liberal"; it is narrow and chary. Unlike many trustees and investors in RMBS securities, the plaintiff certificateholders here perspicaciously anticipated (or at least terribly feared the prospect of) our decision in *ACE I*, which held that the statute of limitations accrued the moment the representations and warranties were made, not the date on which a breach occurred by failing to honor the cure or repurchase provision. Their suit provided full notice to HSBC; HSBC does not allege otherwise. Had the Trustee simply sat by the sidelines, the certificateholders would have been able to refile their action after providing the 60- and 90-day cure periods; indeed, after our decision in *ACE I*, holding that the failure to provide those periods was *not* a condition precedent to filing suit, they could have proceeded on their original suit. Only because the Trustee saw the merit in their position and attempted to substitute itself as the nominal plaintiff can HSBC avoid having to respond to the claims on the merits. Nothing about CPLR 205 (a) or our own interpretations of it and its predecessors compels that result; indeed, they compel the opposite.

Order affirmed, with costs. Opinion by Chief Judge DiFiore. Judges Rivera, Garcia, Singas, Cannataro and Troutman concur. Judge Wilson dissents in an opinion.

Decided June 16, 2022