(August 3, 1995)

■ In the Matter of the Estate of Baby Girl Launders, Deceased. In the Matter of Hedda Nussbaum. New York City Police Department et al., Appellants; Michele Launders et al., Respondents. [630 NYS2d 309] —Order, Surrogate's Court, New York County (Eve Preminger, S.), entered on or about December 14, 1993, which granted respondents' motion to renew and reargue, and thereupon denied petitioners' and applicant's motions to revoke the letters of administration issued to respondent Michele Launders in the estate of Baby Girl Launders also known as Lisa Steinberg, affirmed, without costs.

In April 1981, the respondent Michele Launders, then 19 years old and pregnant, and her mother Anita Launders retained attorney Joel Steinberg to represent Michele in the surrender for adoption of her yet unborn child. They had been steered to Steinberg by Michele's obstetrician. Michele was living in the home of her doctor's receptionist at the time because her pregnancy had become obvious and she was concerned about the stigma which attaches to an unwed mother. Anita paid Steinberg $500. Although the Launders admit that Steinberg told them Michele would have to sign a document to effect a legal adoption, it was never specified when the document would have to be signed and none was ever executed.

Michele gave birth to a healthy baby girl on May 14, 1981. Michele saw the baby only once, momentarily, in the delivery room. Two days later the baby was discharged to the doctor and his wife, who then handed the baby over to Steinberg. Rather than arrange a legal adoption, Steinberg kept custody of the baby for himself and Hedda Nussbaum, with whom he lived. Steinberg and Nussbaum held the baby out as their own and named her Lisa. Steinberg severely abused the child, culminating in her death on November 4, 1987. Subsequently, Steinberg was convicted of manslaughter and remains incarcerated.

The police discovered Michele's identity as Lisa's birth mother and she made an application in Surrogate's Court for permission to bury her child. Thereafter, the Surrogate's Court granted limited letters of administration for Lisa's estate so that claims against appellants and others could be pursued.

Respondents later commenced an action in Supreme Court asserting twenty-two causes of action. Various defendants moved, *inter alia*, for partial summary judgment to dismiss the twenty-second cause of action for wrongful death. By order dated October 10, 1989, the Supreme Court (Eugene Nardelli, J.), dismissed that claim because the right to recover for wrongful death is limited to a decedent who is survived by distributees (EPTL 5-4.1 [1]). That court held that Michele had abandoned Lisa (*see, Matter of Maxwell*, 4 NY2d 429, 433) and consequently, pursuant to EPTL 4-1.4 (a), as then enacted, she did not qualify as a distributee of Lisa's estate. Similarly, Michele's mother did not qualify as a distributee because she had cooperated and participated in Michele's abandonment of Lisa. As Lisa had been legally "abandoned" by her biological parent and had never been adopted by Steinberg or Nussbaum, Lisa had no distributees. Thus, there was no one with the standing to maintain a wrongful death action on her behalf. This Court affirmed on February 14, 1991 (*Launders v Steinberg*, 170 AD2d 272, *lv denied in part and dismissed in part* 78 NY2d 983).

In response, various defendants moved in the Surrogate's Court to revoke the letters of administration that had been granted to Michele. They argued, *inter alia*, that the determination of abandonment rendered Michele unqualified to represent Lisa's estate (SCPA 711 [1]).

On June 22, 1993, the Surrogate's Court granted the petitions. It found that it was bound under the principle of collateral estoppel by Justice Nardelli's decision in the Supreme Court action. Because the Supreme Court decision disqualified the birth mother from sharing in Lisa's estate, she was not qualified as a "person interested" in the estate (SCPA 103 [39]) and was not eligible to hold the letters of administration (SCPA 1002 [1]). Accordingly, the Surrogate's Court directed entry of an order revoking the letters.

Meanwhile, the perceived inequity of this result prompted the Legislature to enact remedial legislation. One week after the Surrogate's decision to revoke the letters of administration, respondents learned that on May 21, 1993, the Governor had signed a law amending EPTL 4-1.4 (a). EPTL 4-1.4 (a), as amended, now reads: "No distributive share in the estate of a

deceased child shall be allowed to a parent who has failed or refused to provide for or has abandoned such a child while such child is under the age of twenty-one years, whether or not such child dies before having obtained an age of twenty-one years, unless the parental relationship and duties are subsequently resumed and continue until the death of the child. *Subject to the provisions of subdivision eight of section two hundred thirteen of the civil practice law and rules, this paragraph shall not apply to a biological parent who places such child for adoption with a person or agency based upon: (1) a fraudulent promise, not kept, to arrange for the complete adoption of such child, or (2) other fraud or deceit by the person or agency where, before the death of the child, the person or agency fails to arrange for the adoptive placement or petition for the adoption of the child, and fails to comply timely with conditions imposed by the court for the adoption to proceed."* (Italics indicate text added by the amendment.) In addition chapter 69 of the Laws of 1993, enacting the amendment, provides in section 2: "This act shall take effect immediately and shall apply to all pending actions that commenced prior to its effective date in which an order or judgment revoking the letters of administration of a parent has not been previously issued."

As a result, respondents moved for leave to renew and reargue their opposition to the petitions to revoke the letters of administration. Surrogate Preminger vacated her prior order and denied the motions, noting that the purpose of the amendment was, specifically, to rectify the injustice in this case in disqualifying Michele as a distributee because she placed Lisa for adoption and, generally, to increase the likelihood that a wrongdoer will be held accountable. The Surrogate's Court determined that it was not bound to follow Justice Nardelli's decision under the doctrine of collateral estoppel because the intervening change in the law had materially altered the parties' rights (*Matter of Hodes v Axelrod*, 70 NY2d 364).

We agree with the Surrogate's Court that the statute, as amended, did not impose an affirmative obligation on the biological parent to monitor the adoption process. Rather, the amendment established that the surrendering mother was not disqualified from inheriting from the child where, as demonstrated here, she did not participate in the fraud. The characterization by the dissent of Michele as being "in pari delicto" with the wrongdoers is at odds with the established facts of this case. And, its position ignores the clear import and intent of the amendment to the legislation.

We also reject appellants' argument that the Legislature intended to ensure that the wrongdoer would not go unpunished, and only accidentally and based on an erroneous view of the facts and ignorance of the legal ramifications, fashioned an amendment that reinstates a natural parent's right to share in the child's estate in the event of a failed, fraudulent adoption. As the Legislature was aware that the IAS Court had specifically allowed some claims to proceed against the wrongdoers, the appellants' contention that the Legislature did not intend to allow for the maintenance of a wrongful death claim in this situation, but merely to provide some mechanism by which the wrongdoers could be punished, lacks merit.

Finally, we perceive no abuse of discretion in the court's refusal to revoke the letters on the basis of an alleged conflict of interest between the natural mother and the decedent (*Matter of Marsh*, 179 AD2d 578). We have considered appellants' other contentions and find them to be without merit. Concur—Murphy, P. J., Rosenberger and Mazzarelli, JJ.

Kupferman, J., dissents in a memorandum as follows. I would reverse and revoke the letters of administration issued to the respondent.

The majority well sets forth the background of this case.

The initial determination by this Court (170 AD2d 272) affirming the decision of the Supreme Court (Eugene Nardelli, J.), dismissing the claim for wrongful death, upon which the Surrogate originally relied, still applies subject, however, to the subsequent amendment to EPTL 4-1.4 (a).

A cause of action for wrongful death is a property right belonging to the distributees of a decedent (EPTL 5-4.1, 5-4.4). " '[T]he due appointment and qualification of the administrators are necessary elements to the existence of the cause of action' " (*George v Mt. Sinai Hosp.*, 47 NY2d 170, 177).

The amendment to the EPTL was obviously designed to provide, retroactively, the "necessary elements" in order to prevent wrongdoers from avoiding due retribution. However, here the defendants-appellants, with assets and under the gun, are New York City instrumentalities, while the mother, the administratrix, is in pari delicto with the wrongdoers.

Moreover, the application of the amendment is subject to the provisions of CPLR 213 (8), which provides that, in an action based upon fraud, "the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it".

At the least, inasmuch as the application of the amended section depends on "a fraudulent promise" or "fraud or deceit" (EPTL 4-1.4 [a] [1], [2]), there should be a hearing to determine when the "administratrix" discovered the fraud or could "with reasonable diligence" have discovered it. This would not necessarily be for Statute of Limitations purposes, but to determine whether the EPTL amendment should apply at all considering its "fraud" premise. Apparently, the mother turned a blind eye to the horrible situation until it was much too late.