UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
August Term, 2022
(Argued: March 27, 2023   Decided: September 6, 2023)
Docket Nos. 22-274(L), 22-402(CON)

─────────────────────────

EMA FINANCIAL, LLC,
*Plaintiff-Counter-Defendant-Counter-Claimant-Appellee-Cross-Appellant,*

v.

JOEY CHANCIS, RICHARD ROER,
*Defendants-Counter-Claimants-Counter-Defendants-Appellants-Cross-Appellees,*

RAR BEAUTY, LLC, LABB, INC., REFLEX PRODUCTIONS, INC., RICHARD CHANCIS,
JOEY NEW YORK, INC.,
*Defendants-Counter-Claimants-Counter-Defendants.**

─────────────────────────

Before:      SACK, LOHIER, AND CARNEY, *Circuit Judges.*

This action concerns loans issued by the plaintiff, EMA Financial, LLC, to a group of companies that were controlled by Joey Chancis, Richard Chancis, and Richard Roer.  The loan agreements contained so-called "floating-price conversion option" provisions, which gave EMA the right to exercise an option to receive company stock in lieu of cash repayment on the loans.

When EMA initially sought partial repayment of the loans through the stock repayment option in 2017, the companies delivered the shares to EMA at the agreed-upon discount rate.  Later that year, EMA sought to exercise the conversion option again.  This time, the companies failed to deliver the stock.

EMA then brought suit, claiming, *inter alia,* breach of contract and breach of guaranty as to the loan agreements, and fraudulent conveyance and fraudulent inducement.  The defendants asserted as an affirmative defense that

---

* The Clerk of Court is respectfully directed to amend the official caption as set forth above.

the loan agreements were void because the conversion option provisions rendered the agreements criminally usurious under New York law. The district court (Vernon S. Broderick, *J.*) dismissed this defense and granted several of EMA's claims on summary judgment. After a bench trial on the remaining issues in the case, the district court entered judgment in favor of EMA for some of its claims and in favor of the defendants for others.

Joey Chancis and Richard Roer now appeal, arguing in relevant part that the district court's dismissal of the usury defense at summary judgment should be vacated in light of an intervening change in New York law. EMA cross-appeals, challenging, among other things, several findings in the district court's post-trial order.

We agree with the defendants that the district court erred in deciding that, as a matter of law, the loan agreements were not usurious under New York law. We therefore decline to address EMA's challenges to the district court's judgment at this time. Accordingly, we

VACATE AND REMAND in part for the district court's further consideration of this issue.

JEFFREY FLEISCHMANN, Law Office of Jeffrey Fleischmann, P.C., New York, NY, *for* EMA Financial, LLC;

MARJORIE SANTELLI (Mark R. Basile and Eric Benzenberg, *on the brief*), The Basile Law Firm P.C., Jericho, NY, *for* Joey Chancis and Richard Roer.

SACK, *Circuit Judge*:

This action concerns loans issued by the plaintiff, EMA Financial, LLC (hereinafter, "EMA"),[1] to a group of companies (hereinafter, the "Corporate Defendants")[2] that were controlled by Joey Chancis, Richard Chancis, and Richard Roer (hereinafter, the "Individual Defendants"). The loan agreements contained so-called "floating-price conversion option" provisions, which gave EMA the right to receive company stock at a discounted rate in lieu of cash repayment on the loans. Following the execution of the loan agreements, the Individual Defendants commingled company funds with their personal assets and disregarded corporate formalities.

When EMA initially sought partial repayment of the loans through the stock repayment option in 2017, the Corporate Defendants delivered the shares to EMA at the agreed-upon discount rate. But when EMA sought to exercise the conversion option again later that year, the Corporate Defendants failed to deliver the stock.

---

[1] For ease of reference, we refer in this opinion to Plaintiff-Counter-Defendant-Counter-Claimant-Appellee-Cross-Appellant EMA as the "plaintiff."

[2] The Corporate Defendants are RAR Beauty, LLC (hereinafter, "RAR"), Labb, Inc. (hereinafter, "Labb"), Reflex Productions, Inc. (hereinafter, "Reflex"), and Joey New York, Inc.

EMA then brought suit against the Corporate Defendants and the Individual Defendants, claiming, *inter alia*, breach of contract and breach of guaranty as to the loan agreements, fraudulent conveyance, and fraudulent inducement.  The Corporate Defendants and the Individual Defendants asserted as an affirmative defense that the loan agreements were void because the conversion option provisions rendered the loan agreements criminally usurious under New York law.  On summary judgment, the district court (Vernon S. Broderick, *J.*) dismissed this defense and granted some of EMA's claims.  The district court then held a bench trial to resolve the remaining issues in the case, including EMA's claims for fraudulent conveyance and fraudulent inducement against the Individual Defendants.[3]  The district court ultimately entered judgment in favor of EMA for some of its claims and in favor of the Individual Defendants for others.

Joey Chancis and Richard Roer (hereinafter, the "Defendants/Appellants") now appeal, arguing in relevant part that the district court's dismissal of the usury defense at summary judgment should be vacated in view of an intervening

---

[3] As discussed below, by the time of the bench trial, counsel for defendants had withdrawn representation, and the district court had granted motions for default judgment against the Corporate Defendants in light of their inability to proceed pro se.  Therefore, only the Individual Defendants proceeded to the bench trial on a pro se basis.

change in New York law.  EMA cross-appeals, challenging, among other things, several of the findings in the district court's post-trial order.

We agree with the Defendants/Appellants that the district court erred in deciding that, as a matter of law, the loan agreements were not usurious under New York law.  We therefore decline to address EMA's challenges to the district court's judgment at this time.  Accordingly, we vacate the district court's judgment in part and remand for further proceedings consistent with this opinion.

## BACKGROUND[4]

### I.     Joey New York

In 1993, Joey Chancis (hereinafter, "Chancis") co-founded Joey New York. The company created and distributed skincare and cosmetic products.  In or around 2009, Joey New York temporarily ceased operations.

In 2010, Richard Roer (hereinafter, "Roer") co-founded RAR, another company that manufactured and distributed beauty and skincare products.  Roer was president of RAR and co-president of Reflex, a division of RAR.

In 2014, Joey New York resumed operations and sold shares to the public.

---

[4] Unless otherwise noted, the following facts are drawn from the district court's findings of fact and are undisputed.

The publicly traded company was named Joey New York, Inc.[5] At that time,

Roer served as president and Chancis served as CEO of Joey New York. In

August 2016, Joey New York acquired a 100% interest in RAR and Labb. Around

the time that Joey New York went public, Chancis's husband, Richard Chancis,

began working as a consultant for Joey New York. In the following years,

Richard Chancis took on increasing responsibilities for company operations.

In 2017, Joey New York sought financing to expand its operations.

Accordingly, on February 1, 2017, Joey New York and EMA entered into a

Securities Purchase Agreement (hereinafter, the "First SPA") pursuant to which

EMA purchased a convertible redeemable promissory note from Joey New York

for $90,000 (the "First Note"). On May 3, 2017, EMA and Joey New York entered

into a second Securities Purchase Agreement (hereinafter, the "Second SPA," and

together with the First SPA, the "SPAs"), pursuant to which EMA purchased

another convertible redeemable promissory note from Joey New York for

$151,600 (hereinafter, the "Second Note," and together with the First Note, the

"Notes"). Other than the dollar figures, the relevant terms of the Notes are

materially identical.

---

[5] We refer to Joey New York and Joey New York, Inc. collectively as "Joey New York."

EMA had two options to seek repayment of the loans. It could collect cash repayments, at a default interest rate on the Notes of 24% per year. Alternatively, the Notes contained, and allowed EMA to collect under, floating-price conversion option provisions. As explained by the New York Court of Appeals, a floating-price conversion option is a contract provision that "permits a lender to convert outstanding balance [of debt] to shares of stock at a fixed discount." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 334 (2021) (*Adar Bays II*). In relevant part, the Notes provide:

> [EMA] shall have the right, in its sole and absolute discretion, at any time from time to time, to convert all or any part of the outstanding amount due under this Note into fully paid and non-assessable shares of Common Stock, as such Common Stock exists on the Issue Date, or any shares of capital stock or other securities of the Borrower into which such Common Stock shall hereafter be changed or reclassified at the conversion price (the "Conversion Price") determined as provided herein (a "Conversion").

> [The Conversion Price is the] lower of: (i) the closing sale price of the Common Stock on the Principal Market on the Trading Day immediately preceding the Closing Date, and (ii) 65% of the average of the lowest two (2) sale prices for the Common Stock on the Principal Market during the twenty (20) consecutive Trading Days immediately preceding the Conversion Date or the closing bid price.

*EMA Fin. LLC v. Joey N.Y. Inc.*, No. 17-cv-9706 (VSB), 2022 WL 292920, at *3-4 (S.D.N.Y. Feb. 1, 2022) (citations omitted).

To summarize, under this provision, EMA had the right to exercise an option to exchange debt owed to it under the Notes for company stock. The conversion option guaranteed EMA a strike price on company stock pegged at 65% of the market price at the time when EMA exercised the option. By way of example, if EMA opted to convert $100 of debt, EMA would receive an amount of company stock worth about $154 at the time of conversion, and the loan principal would be treated as paid down by $100—*i.e.* 65% of approximately $154.

## II.     Conduct Following the Execution of the SPAs

Following the execution of the SPAs, Joey New York faced business headwinds. It ultimately failed to turn a profit or make any cash payments to pay down the loans. None of the Individual Defendants ever received a salary from the company after Joey New York went public, despite having invested substantial funds in the company. However, the Individual Defendants made various withdrawals and transfers from the Corporate Defendants' accounts following the execution of the SPAs. As explained by the district court:

> The parties have stipulated as to hundreds of withdrawals, transfers, and other financial transactions that the Individual Defendants made from various corporate accounts since Plaintiff made its first loan to Defendants. These transactions roughly fall into five categories.

First, there are instances where the Individual Defendants transferred money from the corporate accounts to their personal accounts in an effort to reimburse themselves after using the funds in the personal accounts for business expenses. To this end, Defendants testified that they commonly used their personal accounts to pay for significant expenses on behalf of the corporate entities and would reimburse those personal accounts, often when the spending limits on those personal accounts had been reached.

The second category of stipulated transactions involve instances where the Individual Defendants transferred money between the various corporate accounts.

Third, there were instances where the Individual Defendants withdrew money from the various corporate accounts for what appear to be legitimate business purposes.

Fourth, there were instances where the Individual Defendants withdrew money from the various corporate accounts for purposes that, at the very least, seem unusual for business expenses and perhaps skirted the line between business and personal.

Fifth, there were instances where the Individual Defendants made transfers or withdrawals for which they testified they do not know the purpose. Defendants provided few receipts indicating contemporaneous corroboration of the purpose of these transactions. The Individual Defendants testified that they submitted receipts to Stephanie Cspeke, who was employed by the accounting firm that served as the SEC accountant for the corporate entities, but Defendants did not submit robust documentation to corroborate this process.

*EMA Fin.*, 2022 WL 292920, at \*5-6 (internal citations to trial transcripts and

footnote omitted).

### III.   EMA's Conversions

First in August and September 2017, and then again in 2020 and 2021, pursuant to the SPAs and Notes, EMA submitted notices of conversion to the Corporate Defendants.  The Corporate Defendants honored these notices of conversion and delivered to EMA nearly 20,000,000 shares of Joey New York stock.  By exercising the conversion option and then selling those shares on the open market, EMA generated net proceeds of $301,023.27.  As the district court observed, "[t]his figure is greater than the $241,600 that [EMA] loaned [to the Corporate Defendants] pursuant to the two Notes."  *EMA Fin.*, 2022 WL 292920, at *15.

On October 20 and November 14, 2017, EMA submitted two further notices of conversion to the Corporate Defendants.  In these two instances, the Corporate Defendants did not deliver any shares to EMA.

### PROCEDURAL HISTORY

In December 2017, following the Corporate Defendants' failure to honor EMA's October and November 2017 notices of conversion, EMA filed this action in the United States District Court for the Southern District of New York against Chancis and the Corporate Defendants.  The district court's subject-matter jurisdiction was based on diversity of citizenship.  EMA alleged that the

defendants' failure to honor the notices of conversion constituted breach of contract and breach of guaranty under New York law.[6] EMA also brought a claim for fraudulent inducement against Chancis.

Chancis and the Corporate Defendants asserted a counterclaim against EMA for fraudulent inducement. They also pleaded an affirmative defense seeking to invalidate the SPAs and Notes as usurious under New York law.

In an opinion and order dated September 22, 2019, the district court granted EMA's motion for summary judgment dismissing Chancis's and the Corporate Defendants' affirmative defense of usury. The district court also granted summary judgment in favor of EMA regarding Chancis's and the Corporate Defendants' liability for breach of contract, breach of guaranty, and attorney's fees. Finally, the district court granted EMA's motion to dismiss the defendants' counterclaim for fraudulent inducement.

Following the district court's September 22, 2019 opinion and order, EMA filed an amended complaint. In it, EMA named Roer and Richard Chancis as defendants for the first time in the litigation. EMA now brought claims of fraudulent conveyance and fraudulent inducement against all three Individual

---

[6] The Notes and SPAs include New York choice of law provisions. Accordingly, New York law governs the claims and defenses relating to the Notes and SPAs.

Defendants, alleging in relevant part that they had siphoned money from the Corporate Defendants and put those funds to personal use. EMA sought compensatory and punitive damages, specific performance, and to pierce the corporate veil of the Corporate Defendants in order to hold the Individual Defendants liable for any judgment that EMA obtained against the Corporate Defendants.

After the summary judgment opinion and order issued, but before the bench trial began, the defendants' counsel sought to withdraw from representation. The district court permitted counsel to withdraw. Defendants did not retain new counsel. On May 24, 2021, the district court granted EMA's motion for default judgment as to liability against the Corporate Defendants because corporations cannot proceed pro se. The Individual Defendants proceeded pro se to the bench trial and all subsequent proceedings before the district court.[7]

The district court then presided over a six-day bench trial in June and August 2021 to resolve the then-outstanding issues in the case, including in

---

[7] The Defendants/Appellants are represented by counsel on this appeal.

relevant part EMA's claims for fraudulent conveyance and fraudulent

inducement against the Individual Defendants, and remedies.

On February 1, 2022, pursuant to Federal Rule of Civil Procedure 52, the

district court issued findings of fact and conclusions of law. The district court

ordered that (1) "judgment be granted in favor of [EMA] as to breach of contract,

breach of guaranty, and constructive fraudulent conveyance," *EMA Fin.*, 2022

WL 292920, at *1; (2) "judgment [be] denied as to fraudulent inducement and

actual fraudulent conveyance, and [EMA] is not permitted to pierce the corporate

veil," *id.*; (3) "[EMA] is entitled to an award of $151,418.50 in compensatory

damages for its contractual claims, plus prejudgment interest accruing at 24% per

year from July 26, 2017," *id.*; and (4) "[EMA] is not entitled to punitive damages

or specific performance," *id.*[8]

Two of the Individual Defendants, Roer and Chancis, now appeal, arguing

in relevant part that the district court erred by dismissing their affirmative

defense of criminal usury.

---

[8] The Individual Defendants also raised a defense seeking to void the Notes under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. The district court rejected this argument in its post-trial order. *EMA Fin.*, 2022 WL 292920, at *18.

EMA cross-appeals, asserting, *inter alia*, that the district court erred by (1) denying it damages for its claims for constructive fraudulent conveyance; (2) dismissing its claims for actual fraudulent conveyance; and (3) denying its request to pierce the corporate veil of the Corporate Defendants. As discussed below, we decline to address the issues raised in EMA's cross-appeal in view of our resolution of the Defendants/Appellants' appeal.

## DISCUSSION

### I.  Standard of Review

The Defendants/Appellants challenge the district court's grant of summary judgment dismissing their affirmative defense of criminal usury under New York law. "We review the district court's grant of summary judgment *de novo*, and we will affirm only if the evidence, when viewed in the light most favorable to the party against whom it was entered, demonstrates that there is no genuine issue as to any material fact and that judgment was warranted as a matter of law." *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 138 (2d Cir. 2017).

### II.  The Affirmative Defense of Usury

Under New York law, a loan contract is criminally usurious, and therefore void, if the contract provides for an annual interest rate of 25% or more. N.Y. Penal Law § 190.40; N.Y. Gen. Oblig. Law § 5-511. Before Roer was joined as a

defendant in this action, Chancis and the Corporate Defendants pleaded an affirmative defense of criminal usury in their answer and sought to void the Notes on that basis. They argued that the floating-price conversion options in the Notes were structured in such a way that EMA could collect interest on the loans at a rate that exceeded 25% per year. But in its September 22, 2019 summary judgment opinion and order, the district court dismissed the usury defense, explaining that "[b]ecause [EMA] could have elected to obtain repayment of the principal in cash at an interest rate that Defendants do not assert would exceed twenty-five percent, the [Notes and SPAs] were not usurious on their face, and Defendants' argument that they are unenforceable fails." *EMA Fin. LLC v. Joey N.Y., Inc.*, No. 17-cv-9706 (VSB), 2019 WL 4600863, at *5 (S.D.N.Y. Sept. 22, 2019) (footnote omitted).

## A.

Following the summary judgment order, as this case was proceeding to trial, a panel of this Court was presented with materially identical questions of law to those raised by Chancis and the Corporate Defendants on summary judgment:

> 1. Whether a stock conversion option that permits a lender, in its sole discretion, to convert any outstanding balance to shares of stock at a

fixed discount should be treated as interest for the purpose of determining whether the transaction violates N.Y. Penal Law § 190.40, the criminal usury law.

2. If the interest charged on a loan is determined to be criminally usurious under N.Y. Penal Law § 190.40, whether the contract is void *ab initio* pursuant to N.Y. Gen. Oblig. Law § 5-511*A*

*Adar Bays, LLC v. GeneSYS ID, Inc.*, 962 F.3d 86, 94 (2d Cir. 2020) (*Adar Bays I*).

In *Adar Bays I*, we explained that the New York Court of Appeals had, at that time, not yet addressed either of those questions and that "the existing case law [was] unclear." *Id.* at 92. Because we further concluded that the other necessary conditions for certification were satisfied, we certified those two questions to the Court of Appeals. *Id.* at 93-94.

The Court of Appeals accepted the certified questions, *Adar Bays, LLC v. GeneSYS ID, Inc.*, 35 N.Y.3d 996 (2020), and answered both in the affirmative in an opinion dated October 14, 2021, *Adar Bays II*, 37 N.Y.3d at 323-24. The Court of Appeals held that "[b]ecause floating-price conversion options have intrinsic value that is bargained for in these loans, they should be treated as a component of interest." *Adar Bays II*, 37 N.Y.3d at 337; *see also id.* at 334 ("New York law requires that the value of the conversion option . . . should be included in determining the loan's interest rate for purposes of the usury statutes, to the extent such value, when measured at the time of contracting, can be reasonably

determined.").  And if a loan's interest rate, taking into account the floating-price conversion option, exceeds the statutory cap of 25%, then the loan is "subject to the same consequence as any other usurious loans: complete invalidity of the loan instrument."  *Id.* at 333.  Ultimately, the value of a floating-price conversion option "is a question of fact, and the burden to prove that value is on the borrower."  *Id.* at 334.

Following *Adar Bays II*, we directed the district court to resolve in the first instance whether the value of the floating-price conversion option at issue in *Adar Bays* caused the interest rate on the loan to exceed 25%.  *Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379, 382 (2d Cir. 2022) (*Adar Bays III*).  We also "instruct[ed] that, should the district court determine on remand that the Note was usurious, it should find the Note void and unenforceable."  *Id.*[9]

B.

The Defendants/Appellants argue that the floating-price conversion options in the Notes are substantially the same as the options that were at issue in *Adar Bays*.  The Defendants/Appellants contend that they are therefore entitled to a similar remedy to the one that we granted to the borrower in *Adar Bays III*—

---

[9] The *Adar Bays* parties settled the case following *Adar Bays III* before the district court had the opportunity to determine whether the loan at issue in that case was usurious under *Adar Bays II*.

vacatur of the aspects of the district court's judgment imposing liability on them for breaching the SPAs and Notes and remand to the district court to determine in the first instance whether the Notes are usurious and therefore void.

EMA does not, and we think could not, dispute that the floating-price conversion options in this case are substantially the same as the options in *Adar Bays*. EMA also does not dispute that the district court's treatment of the usury defense at summary judgment is irreconcilable with the Court of Appeals's decision in *Adar Bays II*. Instead, EMA argues that the Defendants/Appellants have waived the usury affirmative defense and are thus precluded from raising it on appeal. As explained below, we conclude that EMA's arguments are without merit.

## C.

EMA argues that the Defendants/Appellants waived or forfeited any usury defense before the district court. We disagree.

Chancis and the Corporate Defendants expressly pleaded an affirmative defense of usury in their answer to EMA's original complaint. After the district court's summary judgment order, EMA filed an amended complaint, adding Roer as a defendant. All the defendants, including Roer, then filed a joint answer

to the amended complaint that incorporated by reference all the affirmative defenses that the defendants had raised in their prior answer. *See Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) ("Rule 8(c) of the Federal Rules of Civil Procedure requires that a responsive pleading must set forth certain enumerated affirmative defenses as well as 'any other matter constituting an avoidance or affirmative defense.'")

The district court then held a bench trial that ended in August 2021. The Court of Appeals decided *Adar Bays II* on October 14, 2021—after the bench trial concluded but before the district court had issued its findings of fact and conclusions of law. On October 18, 2021—four days after the Court of Appeals decided *Adar Bays II*—Chancis (at that point proceeding pro se) wrote a letter to the district court informing it of *Adar Bays II* and arguing that the court should revisit the aspect of its summary judgment opinion and order that dismissed the usury defense. EMA filed a response to that letter. Notwithstanding these letters, the district court did not address *Adar Bays II* or the issue of usury in its findings of fact and conclusions of law.

Based on these facts, it is clear that EMA has been on notice of the Defendants/Appellants' usury defense since the pleading stage, and has had

multiple full and fair opportunities to respond to it—first on summary judgment,

then after Chancis's letter regarding *Adar Bays II*, and now on appeal.

Accordingly, we disagree with EMA that the Defendants/Appellants waived or

forfeited the affirmative defense, even if they pleaded usury in arguably

conclusory terms in their operative answer by incorporating it by reference from

a prior answer. *See Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir. 2003)

(explaining that a district court may decline to deem an affirmative defense

waived even if a defendant omitted the defense from its answer so long as the

defendant raised the defense before the district court and the plaintiff had notice

and an opportunity to respond); *Jones v. Bryant Park Market Events, LLC*, 658 F.

App'x 621, 624 (2d Cir. 2016) (summary order) ("We have held that, when a

defendant omits an affirmative defense from his answer, a district court may

nevertheless decline to deem the defense waived if the plaintiff had notice and

an opportunity to respond. There is no reason that this rule should not also

apply when a defendant includes an affirmative defense in his answer, but states

it in conclusory terms." (internal citation omitted)).

D.

As noted above, before trial, the lawyer who represented the defendants withdrew from representation. Because a corporation cannot proceed pro se, the district court granted default judgments against the Corporate Defendants. EMA now argues that (1) because the Corporate Defendants defaulted after losing on the issue of usury at summary judgment, the Corporate Defendants waived the defense; (2) the Corporate Defendants are in privity with the Defendants/Appellants; and (3) as a result, the Defendants/Appellants are collaterally estopped by the default judgments against the Corporate Defendants from raising the usury defense on appeal. We disagree.

When a district court sits in diversity, the governing preclusion law is that of the state in which the court is located—in this case, New York. *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 371 (2d Cir. 2023). In New York, even if the other necessary conditions of collateral estoppel are met, the doctrine is inapplicable where there has been an "intervening change in law [that] materially alter[s] the parties' rights." *In re Estate of Baby Girl Launders*, 630 N.Y.S.2d 309, 311 (1st Dep't 1995); *see also Snyder v. Newcomb Oil Co.*, 603 N.Y.S.2d 1010, 1015 (4th Dep't 1993) (explaining that New York preclusion doctrines "are

flexible, not absolute, and give way in extraordinary circumstances such as a change in the law").

It is undisputed on appeal that *Adar Bays II* changed New York law governing the Defendants/Appellants' usury defense. It is also clear that *Adar Bays II* materially altered the Defendants/Appellants' rights by providing them with a newly viable avenue by which they could seek to void the Notes and avoid liability for breaching them. Therefore, even assuming the other necessary conditions for collateral estoppel are met, the Defendants/Appellants are not precluded from raising a usury defense notwithstanding the Corporate Defendants' default.

\* \* \*

In sum, the Defendants/Appellants did not waive or forfeit and are not precluded from advancing an affirmative defense of usury. Accordingly, pursuant to *Adar Bays II* and *Adar Bays III*, we vacate the district court's judgment imposing breach of contract and breach of guaranty liability on the Defendants/Appellants and remand the matter to the district court to determine whether the floating-price conversion options render the Notes usurious. Should the district court determine that the value of the floating-price conversion options, when measured at the time of contracting, causes the interest rates on

the Notes to exceed 25%, we respectfully instruct the district court to find the

Notes void and unenforceable pursuant to *Adar Bays III*. *See* 28 F.4th at 382.

### III.    Remaining Issues

The Defendants/Appellants and EMA raise several other arguments

challenging the district court's judgment.  The Defendants/Appellants contend

that the Notes are void for the additional reason that they are securities and were

performed in violation of the Exchange Act because of EMA's failure to register

as a broker-dealer.  In its cross-appeal, EMA argues that the district court erred

by (1) miscalculating breach of contract damages; (2) not awarding it attorney's

fees under the SPAs and Notes; (3) dismissing its claims for actual fraudulent

conveyance against the Defendants/Appellants; (4) denying it any relief for its

claims for constructive fraudulent conveyance against the

Defendants/Appellants; and (5) denying EMA's request to pierce the corporate

veil in order to hold the Defendants/Appellants personally liable for any

judgment against the Corporate Defendants.

We need not, and therefore decline to, address any of these arguments at

this time in light of our vacatur of the district court's judgment imposing breach

of contract and breach of guaranty liability on the Defendants/Appellants.  In the

event that the district court concludes on remand that the Notes are not usurious

under New York law, the parties may present these arguments again in any

subsequent appeal.

## CONCLUSION

We have considered the parties' remaining arguments on appeal and

conclude that they are without merit.  For the reasons explained above, we

vacate the district court's judgment in part and remand for further proceedings

consistent with this opinion.   Any further appeal will be referred to this panel,

and the party taking appeal shall advise the Clerk of Court of this direction.  *See*

*United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994).[10]

---

[10] *See also Gulliver v. Dalsheim*, 739 F.2d 104, 106 (2d Cir. 1984) (noting past panel retained jurisdiction "in the event that the findings of fact or conclusions of law on the remand d[id] not enable or require the court of appeals to dispose of the case summarily"); *Corporación Mexicana De Mantenimiento Integral v. Pemex-Exploración Y Producción*, 832 F.3d 92, 115 (2d Cir. 2016) ("In typical *Jacobson* remands, we remand partial jurisdiction to the district court to supplement the record on a discrete factual or legal issue while retaining jurisdiction over the original appeal." (Winter, J., concurring)).