21-2716 (L)
*Principal Life Insurance Co. v. Brand*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of November, two thousand twenty-three.

PRESENT:     AMALYA L. KEARSE,
             SUSAN L. CARNEY,
             MYRNA PÉREZ,
                  *Circuit Judges.*

_____

PRINCIPAL LIFE INSURANCE COMPANY,

    *Plaintiff-Counter-Defendant-Appellee-Cross-Appellant*,

    v.                               Nos. 21-2716, 21-2908

JASON P. BRAND,

    *Defendant-Counter-Claimant-Appellant-Cross-Appellee.*

_____

FOR DEFENDANT-APPELLANT-CROSS-APPELLEE:    TODD D. KREMIN,
    Greenblatt Agulnick Kremin P.C.
    Great Neck, New York

FOR PLAINTIFF-APPELLEE-CROSS-APPELLANT:    LOUIS P. DIGIAIMO (Janet Nagotko,
    *on the brief*), McElroy, Deutsch,
    Mulvaney & Carpenter, LLP
    Tinton Falls, New Jersey

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gary R. Brown, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **VACATED IN PART**, and the case is **REMANDED** for further proceedings.

Jason Brand ("Brand") appeals from the judgment of the district court entered on September 30, 2021, challenging the court's dismissal of Brand's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. Brand's counterclaims are based on the failure of Principal Life Insurance Company ("Principal Life") to pay him benefits under his disability insurance policy (the "Policy"). Principal Life cross-appeals from the same judgment, assailing the court's (1) dismissal of its claim for an order declaring the Policy "null and void and rescinded," (2) failure to decide whether Brand committed fraud in obtaining the Policy, and (3) consideration of the 2016 determination of disability issued to Brand by the Social Security Administration Office of Disability Adjudication and Review. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm in part, vacate in part, and remand.

## STANDARD OF REVIEW

We review the grant of summary judgment de novo, construing the evidence in favor of the nonmoving party. *See Janes v. Triborough Bridge & Tunnel Authority*, 774 F.3d 1052, 1054 (2d Cir. 2014). Where rulings on cross-motions for summary judgment are appealed, each

party's motion must be examined on its own merits, with all reasonable inferences drawn against the party whose motion is under consideration. *See Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## DISCUSSION

New York applies general rules of contract interpretation to insurance policies. *See Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 147 (2d Cir. 2017). The words and phrases in a contract must be given their plain meaning, *id.*, and the contract must be construed to give full meaning and effect to all of its provisions. *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992). Contract terms are ambiguous, however, if they are "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996) (internal quotation marks omitted). But "[s]training a contract's language beyond its reasonable and ordinary meaning" will not be understood to "create an ambiguity." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 149 (2d Cir. 1993). Finally, "all provisions of a contract [should] be read together as a harmonious whole." *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 69 (2d Cir. 2002) (internal quotation marks omitted).

### 1. A Judicial Determination of Fraud is Required for Principal Life to Rescind

The critical terms of the Policy for present purposes are the Time Limit on Certain Defenses provision ("Time Limit" provision) and the Fraud provision, which follows the Time Limit provision directly in the Policy's text. They read as follows:

3

**TIME LIMIT ON CERTAIN DEFENSES**

In issuing the coverage(s) under this policy and any attached riders, We [i.e., the Insurer] have relied on the statements and representations on the application. We have the right *to void the coverage(s)* due to a material misstatement or omission in the application. However, after two years from the effective date of coverage(s), no material misstatements or omissions, except fraudulent statements or omissions, made by You or the Owner in an application will be used *to void the coverage(s) or deny a claim* for Disability which starts after the expiration of such two-year period. . . .

**FRAUD**

Upon a judicial decision in a civil or criminal court that You and/or the Owner have committed fraud in obtaining this policy or the filing of a claim under this policy, We may *void this policy*.

App'x at 2490 (emphases added). We interpret the words "policy" and "coverage," and the phrase "deny a claim," in accordance with their ordinary and plain meanings and as parties to an insurance contract would reasonably understand them. *See Olin,* 864 F.3d at 147–48.

Principal Life contends that the Time Limit provision entitled it to void the Policy and obtain a judicial ruling of rescission. In doing so, it attempts to equate voiding "the coverage" (under the Time Limit provision) with voiding "the [P]olicy" (under the Fraud provision). We are unpersuaded. To begin, that the phrasing of the two clauses is different suggests that they are best understood as having different meanings. The Time Limit provision addresses "void[ing] . . . coverage" and "deny[ing] a claim." Both actions reject a particular claim or set of claims; neither purports to terminate the Policy as a whole. In contrast, the Fraud provision addresses the conditions on which Principal Life may "void th[e] [P]olicy." We understand "coverage" under the Policy and the continued existence of the Policy—that is, of the contractual agreement between the insurer and the insured—to be two distinct concepts, as reflected by their

4

different phrasing. For example, a type of coverage might be "voided" as described in the Time Limit provision while the Policy itself could continue in existence, offering other coverages or rights and requiring continued payment of premiums. Further, the Time Limit provision focuses on defenses that the insurer may assert (denying a claim or coverage), whereas the Fraud provision sets out affirmative actions that the insurer may take (rescinding or voiding the Policy as a whole). Only the Fraud provision permits the insurer to void the Policy as a whole, and by its plain terms it allows the insurer to do so only "[u]pon a judicial decision in a civil or criminal court that [the insured] . . . ha[s] committed fraud in obtaining this policy or the filing of a claim under this policy." App'x at 2490.

Principal Life concedes that it has not obtained a judicial determination of fraud with regard to Brand's obtaining or filing a claim under the Policy. Principal Life argues that it can rely on the Fraud provision to rescind where an "insured is adjudicated criminally liable," Appellee's Br. at 41, but that argument fails here because none of the charges of which Brand was convicted concerned fraud with regard to obtaining, or making a claim under, the Policy. *See* App'x at 1211–12. We conclude that Principal Life has not shown an entitlement to rescission at this stage of the proceedings.

## 2. The Criminal Activity Exclusion Applies and Justified Principal Life's Denial of Coverage

In New York, "[t]he law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds." *Beazley Ins. Co. v. ACE Am. Ins. Co.*, 880 F.3d 64, 68 (2d Cir. 2018) (internal quotation marks omitted). Courts may enforce such a clause only when it has "a definite and precise meaning, unattended by danger of misconception . . . and concerning

5

which there is no reasonable basis for a difference of opinion." *Id*. at 68–69 (internal quotation marks omitted). "[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced." *Id*. at 69 (internal quotation marks omitted). When an insurer relies upon an exclusionary clause to deny coverage, it bears the burden of demonstrating that the allegations can be interpreted in one way only: to exclude coverage. *See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (2002).

The Policy contains the following exclusion for criminal activity (the "Criminal Activity Exclusion"):

> This policy does not pay benefits for an injury or sickness which in whole or in part is *caused by, contributed to by, or which results from*: . . . Your commission of or Your attempt to commit a felony, or Your involvement in an illegal occupation[.]

App'x at 2483 (emphasis added). Principal Life contends that this exclusion entitled it to deny Brand's 2014 claim for coverage.

*Estoppel*. As an initial matter, we find no merit in Brand's contention that Principal Life should be estopped from relying on the Criminal Activity Exclusion. He asserts that it invoked the Criminal Activity Exclusion for the first time in its motion for summary judgment. The record shows, however, that Principal Life referenced the Policy's four exclusions generally in its Answer and Affirmative Defenses, and, given the nature of the other exclusions,[1] this was

---

[1] The Policy contains four exclusions. It excludes any "injury or Sickness which in whole or in part is caused by, contributed to by, or which results from: 1. Intentional, self-inflicted injury; or 2. Your commission of or Your attempt to commit a felony, or Your involvement in an illegal occupation; or 3. War or act of war (whether declared or undeclared), or service in the Armed Forces or unit auxiliary thereto; or 4. Loss We have excluded by name or

likely sufficient to put Brand on reasonable notice that Principal Life would later rely on the Criminal Activity Exclusion, at least so as to undercut his estoppel argument.

But even if Principal Life's Answer and Affirmative Defenses left any doubt as to the precise defenses to coverage that it asserted, at the summary judgment stage a district court may entertain unpleaded defenses in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility of the defense, or undue delay of the proceedings. *Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004). Brand has demonstrated none of these factors. Crucially, Brand has not shown any prejudice at all: he had ample opportunity to address Principal Life's Criminal Activity Exclusion argument in his opposition to its motion for summary judgment. In short, Brand had a "full and fair opportunit[y] to respond," even assuming that Principal Life pleaded its affirmative defense in "arguably conclusory terms." *EMA Fin., LLC v. Chancis*, 80 F.4th 395, 404 (2d Cir. 2023). The district court therefore properly entertained Principal Life's argument that the Criminal Activity Exclusion barred Brand's claim for benefits.

*Application of the Criminal Activity Exclusion.* As to the applicability of the Criminal Activity Exclusion, Brand premised his November 2014 claim for disability benefits on his assertion that he was "total[ly] disab[led]" by "extreme anxiety" that began in "July 2014, [after] a warrant was served" on him by officers of the New York State Attorney General's Office. App'x at 451 (quoting application for benefits). The application cites no other cause or type of disability. On February 8, 2016—about fifteen months after filing the application—Brand

---

specific description in any attached rider or endorsement." App'x at 2483.

entered into a plea agreement in which he admitted to committing, in connection with his businesses, and between January 1, 2009, and March 11, 2015, the felony crimes of enterprise corruption, insurance fraud in the first degree,[2] and grand larceny in the second degree. App'x at 1205, 1209. The Criminal Activity Exclusion excludes coverage when an insured's commission of a felony "in whole or in part . . . *contribute[s] to*" the insured's "injury or [s]ickness." App'x at 2483 (emphasis added).

Brand thus has sworn that he committed enterprise corruption, insurance fraud, and grand larceny in the period before he submitted his disability claim for "extreme anxiety." Those activities led to the execution of a search warrant that Brand cited in his disability claim and to his subsequent prosecution. We therefore see no genuine dispute of fact as to whether Brand's commission of these felonies in part "caused" or "contributed to" the extreme anxiety that formed the basis of his 2014 disability application: his felonious conduct led to the warrant and the prosecution, and it was those actions that in Brand's own words triggered his extreme anxiety.

Brand resists this conclusion, contending that it was the criminal *proceedings* brought against him, not his *commission* of several felonies, that were the proximate cause of his disability. This argument is meritless. Even if the criminal proceedings triggered his most extreme anxiety, it was Brand's commission of the felonies that led to those criminal proceedings that in turn led to his disabling anxiety. There is no genuine dispute that Brand's felony conduct "contributed to" the onset of that anxiety.

---

[2] The insurance fraud of which Brand was convicted concerned the operations of his business, not his application for, or his claim under, the Policy.

8

Brand raises one final protest, arguing that the district court erred by failing to distinguish between the physical disability and the mental disability for which he claimed benefits in the 2014 application. The disability that Brand cited in his application, however, was "extreme anxiety" that began in "July 2014, [after] a warrant was served." App'x at 451. Although Brand asserts on appeal that he "submitted a claim to Principal [Life] for both a mental disability and a physical disability," Appellant's Br. at 3, *see also id.* at 27–28, Brand does not cite any record evidence showing that he filed a separate claim for disability benefits related to a physical disability.

To support his assertion that he is physically disabled within the meaning of the Policy and therefore entitled to benefits notwithstanding the absence of an application submitted on that ground, Brand points to the favorable disability determination issued to him in 2016 by the Social Security Administration. *See id.* at 27.[3] Even assuming, over Principal Life's objections, that the Social Security Administration's determination is admissible, it does not help Brand: that determination considered *both* Brand's physical ailments and his psychiatric ones in finding him disabled. Indeed, the determination letter shows that the Social Security Administration examiner concluded that Brand has "residual functional capacity to perform sedentary work as defined in 20 CFR 4041.1567(a)," in part, because he "can occasionally maintain attention and concentration, maintain a regular schedule[,] appropriately deal with stress[,] and interact

---

[3] Brand also cites to Principal Life's rescission letter, in which Principal Life sought to rescind the Policy, in part, on grounds that Brand failed to disclose fully his history of neck and back injuries in his 2012 application for disability insurance. Appellant's Br. at 28 (citing App'x at 277). That letter has no bearing, however, on the question whether Brand has submitted a claim for disability benefits based on his physical disabilities.

appropriately with others." D. Ct. Dkt. 300-8 at 12. In reaching that conclusion, the examiner gave "great weight" to a psychiatric evaluation finding "psychiatric issues . . . hindered [Brand's] functioning." *Id.* at 15. Thus, Brand has not shown that he is disabled within the meaning of the Policy independent of his psychiatric disabilities; accordingly, his claim falls within the ambit of the Criminal Activity Exclusion.

### 3. The Question Whether Principal Life Is Entitled to Rescind the Policy is Justiciable

The district court declined to address Principal Life's request for a declaration that the Policy was void, reasoning that Principal Life's claim for an order rescinding the Policy was "rendered moot by [the magistrate judge's] determination that [Brand] is not entitled to coverage under the [P]olicy. In other words, because Principal Life has been relieved of its obligation to pay the disputed claim, there remains no 'substantial controversy' between the parties that would warrant a declaratory judgment." *Principal Life Ins. Co. v. Brand*, No. 15-cv-3804, 2021 WL 4458843, at *2 (E.D.N.Y. Sept. 29, 2021). On de novo review, we disagree.[4]

Article III of the Constitution limits the "judicial Power of the United States" to "Cases" and "Controversies." U.S. Const. art. III, §§ 1–2. As codified in title 28 of the United States Code, the Declaratory Judgment Act (DJA) provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

---

[4] As the district court pointed out, this case has involved "more than six years of litigation, hundreds of court filings, and *approximately 75 orders issued by at least five different judicial officers.*" *Brand*, 2021 WL 4458843, at *1 (emphasis in original). Still, the district court's treatment of the rescission claim was both incorrect and internally inconsistent. The court concluded that the rescission claim was "moot" and thus that there was "no substantial controversy," *id.* at *2 (internal quotation marks omitted), yet it also entered a final judgment purporting to grant "summary judgment as to [Principal Life's] rescission claims," Sp. App'x at 57, an adjudication on the merits. Without jurisdiction, the court could not enter a merits determination on the rescission claim.

could be sought." 28 U.S.C. § 2201(a). The Supreme Court has instructed that "the phrase 'case of actual controversy' in the [DJA] refers to the [same] type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

The critical question for courts in assessing their jurisdiction under Article III to entertain a claim for declaratory relief "is whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (internal quotation marks omitted). That "liability may be contingent does not necessarily defeat jurisdiction of a declaratory[-]judgment action. Rather, courts should focus on the practical likelihood that the [relevant] contingencies will occur." *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177 (2d Cir. 2001) (internal quotation marks omitted). Relevant here, we have observed that "litigation over insurance coverage has become the paradigm for asserting jurisdiction [under the DJA] despite future contingencies that will determine whether a controversy ever actually becomes real." *Id.* (internal quotation marks omitted).

We have explained that Brand's 2014 claim for benefits is barred by the Criminal Activity Exclusion and that Principal Life was within its rights to reject the claim. Accordingly, the related breach of contract claim no longer presents a substantial controversy between the parties. Nevertheless, because we conclude that Principal Life cannot rescind the Policy without a judicial determination of whether Brand committed fraud in obtaining the Policy or submitting a claim under the Policy, Brand remains contractually entitled to submit additional claims under the Policy based on a different—perhaps a future—disability, provided that he meets other

11

applicable conditions (such as continued payment of premiums, for example). The continued existence of that right (along with the potential liability for Principal Life) suffices to make Principal Life's claim for rescission a substantial, immediate, and real controversy. *See Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan*, 77 F.3d 48, 51 (2d Cir. 1996) (an insurer's "claim to rescind its policies is by itself a justiciable controversy," even if there are "no active claims pending at the time"). On remand, the district court should determine whether Principal Life has satisfied the conditions necessary for rescission of the Policy.

The district court thus erred in dismissing the remaining claim asserted by Principal Life. Accordingly, we vacate the district court's judgment insofar as it dismissed Principal Life's claim for rescission, and we remand the case for further proceedings.

## CONCLUSION

We **AFFIRM** so much of the judgment as granted Principal Life's motion for summary judgment dismissing, based on the Criminal Activity Exclusion, Brand's counterclaims for breach of contract and breach of the implied covenant of good faith; we **VACATE** so much of the judgment as granted Brand's motion for summary judgment dismissing Principal Life's claim for rescission of the Policy, and we **REMAND** the case for further proceedings on that claim.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12